The CITY AND COUNTY OF DENVER, Petitioner,

v.

INDUSTRIAL COMMISSION OF the STATE OF COLORADO, and Pamela Kay Ortega, Respondents.

No. 86SC252.

Supreme Court of Colorado, En Banc.

May 16, 1988.

Stephen H. Kaplan, City Atty., Geoffrey S. Wasson, Asst. City Atty., Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mary Ann Whiteside, First Asst. Atty. Gen., Denver, for respondent Indus. Comn.

Law Firm of Leonard M. Chesler, Earl S. Wylder, Rodney Allison, Denver, for respondent Pamela Kay Ortega.

VOLLACK, Justice.

The City and County of Denver petitioned this court requesting certiorari review of *City & County of Denver v. Industrial Commission*, 725 P.2d 89 (Colo.App. 1986). In that case, the court of appeals affirmed the Industrial Commission's holding that the respondent, Pamela Ortega, was entitled to a full award of unemployment compensation benefits after her employment with the City and County of Denver was terminated because she was unable to perform her job due to her alcoholism. We reverse the court of appeals' affirmance of the Industrial Commission's order and remand for further proceedings consistent with this opinion.

I.

Pamela Ortega (Ortega or the claimant), began working for the City and County of Denver (the City) in 1975 as a recreation leader and lifeguard at Washington Park Recreation Center. On a number of days in March 1982, Ortega reported for work in an intoxicated condition. On March 30, 1982, she was given a "Written Reprimand" for reporting to work smelling of alcohol. The reprimand stated that because Ortega worked as a lifeguard, she was jeopardizing the safety of swimmers at the recreation center, as well as her own safety, due to her "impaired performance

because of drinking before coming to work." The reprimand warned Ortega that "a repeat of this incident will warrant an immediate dismissal."

On April 28, 1982, she received a written "final warning" document from the Department of Recreation, advising her that despite the March 30 reprimand she had reported to work "since that date smelling of alcohol." Ortega eventually admitted that she had an alcohol problem and the City requested that she enroll in a monitored Antabuse[1] program at Denver General Hospital (DGH). The City again stressed its concern that Ortega was endangering the lives of herself and others at the swimming facility. After participating in the Antabuse program for "[a]pproximately seven to ten days," she was permitted to withdraw from the program because she complained that the Antabuse made her ill.

Two years later, on March 14, 1984, Ortega again reported to work in an intoxicated condition. When confronted by her supervisor, she admitted that she had been drinking. The City gave Ortega the choice to either be terminated immediately, or to reenroll in the monitored Antabuse program. Ortega chose the latter, and in April 1984 entered into a Stipulation and Agreement with the City by which she agreed to participate in the Antabuse program under conditions established by DGH's Employees Medical Clinic. She agreed to participate in the program for the remainder of her employment or for a period of at least twelve months. The stipulation also provided that her failure to attend the program "may result in her dismissal," and that if she appeared on duty while under the influence of alcohol she would be immediately dismissed. The stipulation was signed by the parties on April 13, 1984.

Less than a month later, on May 9, 1984, Ortega again reported to work while under the influence of alcohol. This time she denied that she had been drinking, so her employer sent her to Denver General Hospital where a blood alcohol test confirmed that she was under the influence of alcohol.[2] In a letter dated May 11, 1984, Ortega was notified of the termination of her employment, effective May 14, 1984, for violation of Career Service Authority Personnel Rule 16–22.

Ortega filed a claim for unemployment insurance benefits with the Colorado Department of Labor and Employment, Division of Employment and Training (Division). A Division deputy determined that the claimant was responsible for her discharge due to "[o]ff-the-job use of not medically prescribed intoxicating beverages or narcotics to a degree resulting in interference with job performance." § 8–73–108(9)(a)(VIII), 3 C.R.S. (1983 Supp.). Her unemployment compensation benefits were reduced under this provision of the statute.

The claimant appealed and a hearing was held before a Division referee. The referee found "no dispute between the claimant and the employer as to the facts which led up to the claimant's separation from employment." The only dispute was whether Ortega was at fault for her alcoholism or whether, as she contends, she suffered from "the disease of alcoholism" and therefore could not be held at fault. The referee held that "her alcoholism was such that, despite taking Antabuse treatment, the claimant could not refrain from ingesting alcohol, [therefore] ... [t]he referee simply has to conclude that the claimant was, in fact, suffering from an illness *over which she had no control.*" (Emphasis

---

1. Antabuse is a prescription drug which causes a patient to become ill if he or she ingests alcohol. The Physician's Desk Reference states: ANTABUSE (disulfiram) is an aid in the management of selected chronic alcoholic patients who *want* to remain in a state of enforced sobriety so that supportive and psychotherapeutic treatment may be applied to best advantage. (Used alone, without proper motivation and without supportive therapy, ANTA-

BUSE is not a cure for alcoholism, and it is ↄ nlikely that it will have more than a brief ↄfect on the drinking pattern of the chronic alcoholic).
Physician's Desk Reference 611–12 (40th ed. 1986) (emphasis in original).

2. Ortega's blood alcohol content was .206 milligrams of alcohol per hundred milliliters of blood.

added). This ruling made Ortega eligible for full unemployment compensation benefits.

The City appealed the referee's award of benefits to the Industrial Commission (Commission). The Commission affirmed, holding that the referee's findings of fact and conclusions of law were "supported by competent and substantial evidence" and "made in accordance with the law."

The City appealed the Commission's decision to the court of appeals. In *City & County of Denver v. Industrial Commission*, 725 P.2d 89 (Colo.App.1986), the court of appeals affirmed the Commission's holding in a two-one decision, Judge Pierce dissenting. *Id.* at 92. The City filed a petition for writ of certiorari which we granted to decide this issue: Whether Ortega should be disqualified from unemployment compensation benefits because she was discharged from her employment after repeatedly appearing for work in an intoxicated condition.

### II.

#### A.

The claimant was terminated for violation of this Career Service Authority Personnel Rule:

16–22 *Causes for Immediate Dismissal.*

. . . .

3) Being under the influence of alcohol while on duty.

. . . .

5) Lying to superiors or falsifying records with respect of official duties.

. . . .

20) Any other act of dishonesty, gross misconduct, or neglect not listed specifically above.

The Division originally denied Ortega's claim based on its application of section 8–73–108(9)(a)(VIII), 3 C.R.S. (1983 Supp.),[3] which states that a worker is disqualified from receiving unemployment compensation benefits for a certain period of time if the worker engages in off-the-job use of intoxicating beverages which are not medically prescribed and which affects the worker's job performance.[4] The referee disagreed with both the deputy's application of 108(9)(a)(VIII) and the result reached. The referee instead applied two subsections of section 8–73–108(4), and held that Ortega was entitled to benefits.

Section 8–73–108(4)(b) provides for a full award of unemployment compensation benefits, under certain circumstances, when a worker leaves employment due to a health problem.[5] Subsection 4(j) provides for a

---

3. The version of section 8–73–108(9) which was in effect at the time of these proceedings stated:

(9)(a) Subject to the maximum reduction consistent with federal law, and insofar as consistent with interstate agreements, *if a separation from employment occurs for any of the following reasons, the employer* from whom such separation occurred *shall not be charged for benefits which are attributable to such employment* and, because any payment of benefits which are attributable to such employment out of the fund as defined in section 8–70–103(13), shall be deemed to have an adverse effect on such employer's account in such fund, *no payment of such benefits shall be made from such fund:*

. . . .

(VIII) *Off-the-job use of not medically prescribed intoxicating beverages or narcotics to a degree resulting in interference with job performance;* . . .

3 C.R.S. (1983 Supp.) (emphasis added). Section 8–73–108(9)(a)(VIII) was repealed, effective July 1, 1984, and reenacted as section 8–73–108(5)(e)(VIII), 3B C.R.S. (1986). The only

change in language is that subpart VIII now states: "intoxicating beverages or controlled substances, as defined in section 12–22–303(7), C.R.S., to a degree resulting in interference with job performance." § 8–73–108(5)(e)(VIII), 3B C.R.S. (1986).

4. There was no dispute in the record that Ortega's intoxication adversely affected her ability to perform her job. The City's written reprimand to Ortega stated: "Jeopardizing participants['] lifes [sic] while they swim due to impaired performance because of drinking before coming to work, can not be tolerated!" Dr. Beck of Denver General Hospital testified that Ortega's blood alcohol level of .206 rendered her . . . "responses and . . . judgment . . . impaired."

5. Section 8–73–108 provides:

(4) **Full award.** *An individual separated from a job shall be given a full award of benefits if* any of the following reasons and pertinent conditions related thereto are determined by the division to have existed. The

full award of benefits if the worker has been separated from a job for "[b]eing physically or mentally unable to perform the work."[6] The Commission adopted the referee's findings and conclusions.

The court of appeals affirmed the Commission's order, reconciling the different provisions of the statute in this manner:

> [T]here was evidence to support the application of § 8–73–108(5)(e)(VIII). However, there was also evidence to support the application of § 8–73–108(4)(j). Since each subparagraph of § 8–73–108(4) is an independent criterion for determining benefits, and the Commission's decision to apply § 8–73–108(4)(j) was supported by substantial evidence, that decision will not be disturbed on review.

*City & County of Denver*, 725 P.2d at 91.

Our resolution of this dispute under the Colorado Employment Security Act depends on whether a worker's conduct which results from his or her alcoholism is volitional or nonvolitional. As framed by Judge Pierce in his dissent, "[t]he critical question raised here ... is what degree of legal responsibility should be imposed upon persons who are alcoholics, and under what circumstances, if any, should alcoholics receive unemployment benefits." *Id.* at 92.

### B.

"*It is the reason for separation* that determines which statutory section applies." *Kortz v. Industrial Comm'n*, 38 Colo.App. 411, 413, 557 P.2d 842, 843 (1976) (emphasis added). "[T]he reason for termination is a question of fact." *Mountain States Tel. & Tel. Co. v. Industrial Comm'n*, 697 P.2d 418, 420 (Colo.App. 1985). The express intent of the General Assembly in granting benefit awards is "that the division at all times be guided by the principle that unemployment insurance is for the benefit of persons unemployed *through no fault of their own.*" § 8–73–108(1)(a), 3B C.R.S. (1986) (emphasis added). "[T]he concept of 'fault' under the statute is not necessarily related to culpability, but must be construed as requiring a volitional act." *Zelingers v. Industrial Comm'n*, 679 P.2d 608, 609 (Colo. App.1984). The question then becomes whether misconduct resulting from alcoholism constitutes a volitional act which disqualifies a claimant from eligibility for unemployment compensation benefits, or a

---

determination of whether or not the separation from employment shall result in a full award of benefits shall be the responsibility of the division. The following reasons shall be considered, along with any other factors which may be pertinent to such determination:

....

(b)(I) *The health of the worker is such that he is separated from his employment and must refrain from working for a period of time,* but at the time of filing his claim he is able and available for work, or the worker's health is such that he must seek a new occupation, or the health of the worker, his spouse, or his dependent child is such that the worker must leave the vicinity of his employment; except that, if the health of the worker or that of his spouse or his dependent child has caused the separation from work, the worker, in order to be entitled to a full award, must have complied with the following requirements: Informed his employer of the condition of his health or the health of his spouse or dependent child prior to his separation from employment; substantiated the cause by a competent written medical statement issued prior to the date of his separation from employment when so requested by the employer prior to the date

of his separation from employment or within a reasonable period thereafter; submitted himself or his spouse or his dependent child to an examination by a licensed practicing physician selected and paid by the interested employer when so requested by the employer prior to the date of his separation from employment or within a reasonable period thereafter; and submitted himself, his spouse, or his dependent child to an examination by a licensed practicing physician selected and paid by the division when so requested by the division. Award of benefits pursuant to this subparagraph (I) shall include benefits to a worker who, either voluntarily or involuntarily, is separated from employment because of pregnancy and who otherwise satisfies the requirements of this subparagraph (I)....

3B C.R.S. (1986).

6. Section 8–73–108 provides:

(4) **Full award.** An individual separated from a job shall be given a full award of benefits if any of the following reasons and pertinent conditions related thereto are determined by the division to have existed.

....

(j) Being physically or mentally unable to perform the work....

nonvolitional act which is through no fault of the worker.

"Conduct induced by alcoholism may or may not be voluntary in the law, depending upon the degree of impairment caused by the alcoholism. The degree of impairment must be determined under the facts of each case." *Huntoon v. Iowa Dep't of Job Serv.*, 275 N.W.2d 445, 448 (Iowa 1979), *cert. denied*, 444 U.S. 852, 100 S.Ct. 105, 62 L.Ed.2d 68 (1979).

Other jurisdictions have used this or a similar approach.[7] *See Jacobs v. California Unemployment Ins. Appeals Bd.*, 25 Cal.App.3d 1035, 1038, 102 Cal.Rptr. 364, 366 (1972) ("To describe alcoholism as a 'disease' may be meaningful in one legal context, misleading in another. To label the individual an 'alcoholic' may shield him from one kind of legal responsibility but not another."); *Craighead v. Administrator Dep't of Employment Sec.*, 420 So.2d 688, 689 (La.App.2nd Cir.), *aff'd on rehearing*, 420 So.2d 690 (1982) (en banc) ("[W]here an employee's impairment resulting from alcoholism is of a sufficient degree to deprive the individual of his ability to abstain from the use of alcohol thus resulting in an intoxication-caused work lapse, the individual's absence or misconduct cannot be said to be voluntary and, therefore, cannot constitute grounds for disqualification from unemployment compensation benefits."); *Moeller v. Minnesota Dep't of Transp.*, 281 N.W.2d 879, 882 (Minn.1979) (Behavior resulting from alco-

holism does not constitute "misconduct" for purposes of unemployment benefits if the employee made "a *reasonable* effort to retain his employment. Given the nature of the disease, it is unreasonable to require the employee to maintain total abstinence even after he enters treatment." (emphasis in original)); *Federoff v. Rutledge*, 332 S.E.2d 855, 861 (W.Va.1985) ("The afflicted employee must assume the responsibility of dealing with this problem—or face the consequences of failing to do so, including discharge and possible disqualification for unemployment compensation.... Refusal to undertake and pursue rehabilitative treatment for chronic alcoholism, therefore, may also place one's eligibility for continued benefits in question."); *see also Huntoon*, 275 N.W.2d at 448 ("It is only when the impairment is sufficient to deprive the individual of the ability to abstain from the intoxication-caused work lapse that the individual does not incur the disqualification for misconduct.").

When a claimant's alcoholism has advanced to the stage that the alcoholic is unable to abstain from drinking, the claimant's conduct may be considered nonvolitional and disqualification from benefits is not required. In contrast, when a claimant's alcoholism is such that the alcoholic is able to choose or decide whether to drink alcoholic beverages, the act of drinking is characterized as volitional. Because fault under the statute requires "a volitional act," this misconduct constitutes fault.

---

3B C.R.S. (1986).

7. The United States Supreme Court recently addressed a similar concept in the context of the "willful misconduct" language of the Rehabilitation Act, 38 C.F.R. § 3.301(c)(2) (1987). *Traynor v. Turnage*, —— U.S. ——, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988). This Act provides educational assistance benefits to veterans of the Armed Forces under the G.I. Bill. Veterans who have been honorably discharged from the armed forces are entitled to receive educational assistance benefits through the Veterans' Administration (VA). These benefits generally must be used within ten years following discharge or release from active duty. *Id.* at ——, 108 S.Ct. at 1376. The petitioners, Traynor and McKelvey, both sought to continue to receive benefits after the ten-year period had expired "on the ground that they had been disabled by alcoholism during much of that period." *Id.*

The issue was whether the petitioners' alcoholism constituted willful misconduct under the statute, thus justifying the VA's denial of the requested extension of time. *Id.* at ——, 108 S.Ct. at 1378.

The statute governing VA educational benefits under the G.I. Bill contains "an exception to [the] 10-year delimiting period for veterans who delayed their education because of 'a physical or mental disability which was not the result of [their] own willful misconduct.'" *Id.* at ——, 108 S.Ct. at 1380. The Court concluded, after analysis of other statutes and the legislative history, that the willful misconduct provision enacted in 1977 "precluded an extension of time to a veteran who had not pursued his education because of primary alcoholism." *Id.* at ——, 108 S.Ct. at 1381. Primary alcoholism is alcoholism that is not secondary to, and a manifestation of, an acquired psychiatric disorder.

<br>

*Zelingers,* 679 P.2d at 609. The degree of impairment and the volitional or nonvolitional nature of a claimant's alcoholism can only be determined under the particular facts of each case. "At a minimum, the claimant must have performed some volitional act or have exercised some control over the circumstance resulting in the discharge from employment." *Gonzales v. Industrial Comm'n,* 740 P.2d 999, 1003 (Colo.1987) (applying § 8–73–108(5)(e)(XX) to a claimant who was terminated for violating the employer's disciplinary guidelines).

We do not characterize "off-the-job" drinking under section 8–73–108(9)(a)(VIII) as strictly volitional. Nor do we classify alcoholism as a disease or health problem which is inherently or by definition nonvolitional. To do either would be irrelevant: "To label the individual an 'alcoholic' may shield him from one kind of legal responsibility but not another." *Jacobs,* 25 Cal. App.3d at 1038, 102 Cal.Rptr. at 366. The disease classification is not necessary to nor dispositive of the issue before us.[8] Rather, the degree and nature of a particular claimant's alcoholism must be determined on an individual basis in each case. In this way, the agency can learn whether a claimant's drinking of alcoholic beverages and resulting misconduct were involuntary, or whether a claimant could have refrained from becoming intoxicated but elected not to do so.

A number of jurisdictions use this volitional/nonvolitional approach.[9] *See, e.g., Mooney v. Commonwealth,* 39 Pa.Commw. 404, 395 A.2d 675 (1978), *aff'd,* 487 Pa. 448, 409 A.2d 854 (1980) (per curiam). ("[A]s the Board found, claimant knew that the only cure for his disease was to completely abstain from alcohol, yet he nevertheless 'decided' to take that first drink. Claimant

must now bear the responsibility for that decision." *Id.* at 408, 395 A.2d at 677.). Another aspect of this issue which demonstrates the need for a case-by-case determination of voluntary and involuntary behavior is that "[t]he mere fact that a person suffers from a disease does not necessarily mean that he or she has no control over the progress of the disease. One can, for example, seek appropriate help and treatment and avoid activities known to aggravate the problem." *Id.* at 407 n. 1, 395 A.2d at 676 n. 1.

In this case, if Ortega was unable to refrain from ingesting alcohol, her inability to perform her job was not the product of a volitional act. On the other hand, if she was able to control or curb her drinking, by whatever means, then her behavior was volitional; such a finding would limit her right to receive unemployment compensation benefits.

### C.

The initial burden of proof is always on a claimant to establish a prima facie case of eligibility for unemployment compensation benefits. *Duenas–Rodriguez v. Industrial Comm'n,* 199 Colo. 95, 97, 606 P.2d 437, 438 (1980); *Arvada v. Industrial Comm'n,* 701 P.2d 623, 624 (Colo.App.1985). If the claimant presents a prima facie case for eligibility and the employer contests "an otherwise eligible claimant's right to benefits on the grounds that the claimant was discharged for misconduct," the employer then has the burden to make a prima facie showing to the contrary. *Arvada,* 701 P.2d at 624; *Denver Symphony Ass'n v. Industrial Comm'n,* 34 Colo.App. 343, 347, 526 P.2d 685, 687 (1974). If the employer meets this burden, the claimant is entitled to present evidence "to justify the acts

**8.** There exists "'a substantial body of medical literature that even contests the proposition that alcoholism is a disease, much less that it is a disease for which the victim bears no responsibility.' Indeed, even among many who consider alcoholism a 'disease' to which its victims are genetically predisposed, the consumption of alcohol is not regarded as wholly involuntary." *Traynor,* — U.S. at —, 108 S.Ct. at 1383

(citation omitted) (quoting *McKelvey v. Turnage,* 792 F.2d 194, 198 (D.C.Cir.1986) (per curiam)).

**9.** *Jacobs,* 25 Cal.App.3d at 1038, 102 Cal.Rptr. at 366; *Huntoon,* 275 N.W.2d at 448; *Craighead,* 420 So.2d at 689; *Moeller,* 281 N.W.2d at 882. *See Morrell v. Commonwealth,* 108 Pa.Commw. 499, — n. 3, 485 A.2d 1214, 1217 n. 3 (1984) (Williams, J., dissenting).

which led to the discharge." *Arvada*, 701 P.2d at 624–25.

■ Here, Ortega would be required to make a prima facie showing of her eligibility for benefits, *i.e.*, a showing that her behavior directly resulted from alcoholism that was, for her, nonvolitional. If she meets this burden, then the City has the opportunity to establish that Ortega's alcoholism was a matter of choice on her part. *See, e.g., Durst Buster Brown v. Commonwealth*, 56 Pa.Commw. 135, 140–41, 424 A.2d 580, 583 (1981) (The order granting unemployment benefits is reversed because "the record affords no competent basis for concluding that the claimant could not control his behavior.") (footnote omitted). Ortega may then present evidence "to justify the acts which led to the discharge." *Arvada*, 701 P.2d at 625.

"[A]n Industrial Commission decision must be set aside if the findings of fact do not support the decision or if the decision is erroneous as a matter of law." *Gonzales*, 740 P.2d at 1001; *see* § 8–74–107(6)(c), 3B C.R.S. (1986) ("The Industrial Claim Appeals Panel's decision may be set aside only upon the following grounds: (c) That the findings of fact do not support the decision.").

■ The record in this case establishes that at the hearing before the Division Referee, a physician with DGH who had treated Ortega when she was in the Antabuse program testified that he met with her a few times and administered the Antabuse medication. He stated that the hospital's determination that she had a blood alcohol content of .206 was an indication that her responses and judgment would be impaired. The physician testified that Ortega came to the clinic as scheduled "[s]even times." Ortega's counsel asked the doctor if her alcoholism was "beyond her control," but this question was never answered. The doctor's records showed that he advised Ortega to get counseling in addition to the Antabuse treatment; she agreed that she would.

When Ortega testified, no testimony was elicited regarding the volitional or nonvolitional nature of her drinking although she did admit that she drank alcoholic beverages during both periods of time when she was on Antabuse.

A psychologist who had consulted with Ortega twice and conducted psychological interviews and screening tests also testified. He testified that she suffered from chronic alcoholism and was participating in Alcoholics Anonymous, but that she also needed additional one-to-one psychotherapy. Both professionals who testified at the hearing agreed that Antabuse alone is not a cure for alcoholism, and is not intended to be.

There are not sufficient facts in the record about Ortega's ability to control her drinking for us to ascertain the volitional or nonvolitional nature of Ortega's alcoholism. First, the referee entered an ambiguous holding which first held that "the claimant was, in fact, suffering from an illness over which she had no control," but stated in the next paragraph: "The Referee finds, at this point, that the claimant is, in fact, undergoing treatment for a cure and is able to engage in an active job search." The decision does not reveal whether the claimant's nonvolitional drinking had become volitional during the time between her termination from employment and her testimony at the hearing. Second, the referee's conclusion that Ortega suffered from "an illness over which she had no control" was conclusory because neither Ortega nor the two health professionals addressed the issue.

Because this determination is necessary, we reverse the court of appeals' affirmance and order the case remanded to the Division for further proceedings to make the factual determination whether Ortega's alcoholism was volitional or nonvolitional. Accordingly, we reverse and remand for further proceedings consistent with this opinion.