COLORADO COURT OF APPEALS        **2016COA96**

Court of Appeals No. 15CA0966
Industrial Claim Appeals Office of the State of Colorado
DD No. 26790-2014

Mesa County Public Library District,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Laurie A. Gomez,

Respondents.

ORDER AFFIRMED

Division I
Opinion by JUDGE HARRIS
Taubman, J., concurs
J. Jones, J., dissents

Announced June 16, 2016

Bechtel & Santo, LLP, Michael C. Santo, Grand Junction, Colorado, for
Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Karp Neu Hanlon, P.C., Anna S. Itenberg, Glenwood Springs, Colorado, for
Respondent Laurie A. Gomez

¶ 1　　In this unemployment compensation benefits case, petitioner, Mesa County Public Library District (Library), seeks review of a final order of the Industrial Claim Appeals Office (Panel). A hearing officer disqualified respondent Laurie A. Gomez from receiving benefits under section 8-73-108(5)(e)(XX), C.R.S. 2015 (failure to meet established job performance standards), finding that although she was mentally unable to perform the work, a designation that would ordinarily entitle her to benefits under section 8-73-108(4)(j), her mental impairment had been caused in the first instance by her own poor work performance. Thus, according to the hearing officer, Ms. Gomez was ultimately at fault for her separation from employment.

¶ 2　　The Panel reversed, concluding that the hearing officer's determination of the etiology of Ms. Gomez's medical condition was too attenuated from the cause of separation to be relevant and was not supported by substantial evidence. We affirm the Panel's decision.

## I.       Background

¶ 3      Ms. Gomez worked for the Library for almost twenty-five years. At the time of her termination, she was the public services manager.

¶ 4      Ms. Gomez began having performance issues in the fall of 2013, shortly after the Library hired a new director.  When she requested additional staff, the director asked Ms. Gomez to prepare an organizational capacity report to determine if she was effectively utilizing existing staff.  Ms. Gomez had never prepared an organizational capacity report before, and the director was not satisfied with her work product, which he characterized as a "data dump" devoid of analysis, cohesion, and context.  Ms. Gomez was subsequently placed on two successive performance improvement plans (PIPs) for failing to manage her staff effectively and act professionally.

¶ 5      In September 2014, the director placed Ms. Gomez on a third PIP and told her that if she did not prepare a satisfactory organizational capacity report by October 7, 2014, she faced additional disciplinary action, including possible discharge.

¶ 6 Ms. Gomez called in sick on October 7. She returned to work on October 8, but she did not communicate with her supervisors about the report and, instead, she spent that afternoon shopping for supplies for a Library event scheduled for the end of the month. Ms. Gomez called in sick again on October 9 and did not return to work thereafter.

¶ 7 On October 14, she submitted a doctor's note to her supervisors, which advised that Ms. Gomez was suffering from an acute stress disorder and major depressive disorder. The doctor recommended that Ms. Gomez remain off from work for four to six weeks so that her condition could stabilize. At the time, Ms. Gomez was taking several psychotropic medications. The Library granted Ms. Gomez's request for time off.

¶ 8 On October 15, while Ms. Gomez was home on leave, the director contacted her and requested that she send the organizational capacity report to him. Ms. Gomez forwarded some documents to him, but the report was not satisfactory, and the director terminated her effective October 20, 2014. According to the hearing officer's findings, the proximate cause of Ms. Gomez's

separation from employment was her failure to "present or prepare a report on organizational capacity for the administrative team."

¶ 9   At the hearing to determine eligibility for unemployment compensation benefits, Ms. Gomez attributed her mental health problems to job-related circumstances. She told the hearing officer that she felt singled out for disciplinary action by the new director and believed that he was trying to force her to quit so that he could replace her with a younger employee. According to Ms. Gomez, her mental health deteriorated significantly after issuance of the September 2014 PIP and, by early October, she had frequent emotional breakdowns at work. She said that her staff offered to help with tasks because they could see that she was "a mess."

¶ 10   The hearing officer determined that Ms. Gomez "bec[ame] mentally unable to perform her job duties." However, she declined to award benefits because she further concluded that Ms. Gomez was "at fault" for becoming mentally unable to complete the report. According to the hearing officer, Ms. Gomez's poor job performance beginning in 2013 led to criticism by her supervisors which, in turn, brought about her stress and major depressive disorders

which ultimately prevented her from completing the report due on October 7. The hearing officer therefore found that Ms. Gomez had failed to meet the employer's established job performance standards and, under section 8-73-108(5)(e)(XX), she was disqualified from receiving benefits.

¶ 11    On review, the Panel adopted the hearing officer's evidentiary findings that Ms. Gomez's failure to complete the report was the reason for her termination and that, at the time the report was due, Ms. Gomez was mentally unable to complete it. The Panel, however, rejected, as a matter of law and fact, the hearing officer's conclusion that Ms. Gomez was disqualified from receiving benefits because she was at fault for her own diagnosed mental health disorders. Accordingly, the Panel awarded Ms. Gomez benefits under section 8-73-108(4)(j).

¶ 12    The Library now appeals.

## II.    Standard of Review

¶ 13    We are bound by the hearing officer's findings of evidentiary facts if they are supported by substantial evidence in the record. *Harbert v. Indus. Claim Appeals Office*, 2012 COA 23, ¶ 7. However,

we review de novo the hearing officer's and the Panel's ultimate conclusions of fact. *Commc'ns Workers of Am. 7717 v. Indus. Claim Appeals Office*, 2012 COA 148, ¶ 7 (citing *Federico v. Brannan Sand & Gravel Co.*, 788 P.2d 1268, 1272 (Colo. 1990)) (ultimate conclusions of fact are conclusions of law or mixed questions of law and fact which determine the parties' rights and liabilities and which are generally phrased in the language of the controlling statute or legal standard). The determination as to whether a claimant was "at fault" for the separation from employment is an ultimate legal conclusion that we likewise review de novo. *Bell v. Indus. Claim Appeals Office*, 93 P.3d 584, 586 (Colo. App. 2004). We will uphold the Panel's decision unless the findings of fact do not support the decision or the decision is erroneous as a matter of law. § 8-74-107(6), C.R.S. 2015; *Nagl v. Indus. Claim Appeals Office*, 2015 COA 51, ¶ 7.

### III.     Discussion

### A.     Legal Principles

¶ 14     The Colorado Employment Security Act (Act) is designed to lighten the burden of unemployment on those who are involuntarily

6

unemployed through no fault of their own. *Colo. Div. of Emp't & Training v. Hewlett*, 777 P.2d 704, 706 (Colo. 1989). Pursuant to the Act, benefits must be granted to an employee unless the job separation was due to one or more statutorily enumerated causes. Id. at 707. The Act is to be liberally construed to further its remedial and beneficent purposes. *Id.*

¶ 15 In a claim for unemployment compensation benefits under section 8-73-108, a claimant must first establish a prima facie case for an award. *City & Cty. of Denver v. Indus. Comm'n*, 756 P.2d 373, 380 (Colo. 1988). Once established, "the burden of going forward shifts to the employer to demonstrate that the claimant's termination was for a reason that would disqualify the claimant from the receipt of benefits under the provisions of § 8-73-108(5)." *Ward v. Indus. Claim Appeals Office*, 916 P.2d 605, 607 (Colo. App. 1995). If this burden is met, "claimant then must present evidence to justify the acts which led to the separation and show that he or she is entitled to benefits under the provisions of § 8-73-108(4)." *Id.*

## B.    Analysis

### 1.    The Panel Properly Accepted the Hearing Officer's Findings of Fact

¶ 16    The Library first argues that the Panel exceeded its authority by substituting its findings of fact for those of the hearing officer. According to the Library, the hearing officer found that Ms. Gomez was terminated because she failed to complete the report, but the Panel determined that the reason for separation was her mental inability to perform her job duties. We disagree.    In fact, the Panel deferred to, and adopted, both of the hearing officer's findings of fact critical to this appeal.  Specifically, the hearing officer first found that the Library "terminated the claimant because the claimant did not present or prepare a report on organizational capacity for the administrative team."  The Panel concluded that this finding was supported by the record, and we agree.  Next, the hearing officer found that Ms. Gomez suffered from acute stress and depression, and that she "be[came] mentally unable to perform her job duties."  The Panel adopted this finding as well, and we likewise conclude that it is supported by evidence in the record.

8

¶ 17    Thus, we, like the Panel, are bound by the hearing officer's finding that Ms. Gomez was terminated for failing to prepare a report that she was mentally unable to complete. *Harbert*, ¶ 7.

¶ 18    Because we are bound by these findings, we reject the Library's next contention that the evidence demonstrated that Ms. Gomez's mental health disorder did not affect her ability to complete the report. The Library insists that because Ms. Gomez worked on the report until early October and failed to notify her supervisors of her mental health problems until after the report's due date, the record did not support a finding that Ms. Gomez's medical condition made her unable to complete the assigned task.

¶ 19    We acknowledge that an employee with a mental health condition is not automatically entitled to benefits upon termination, but must instead demonstrate that her mental health condition rendered her unable to perform her job duties. *See, e.g., Tague v. Coors Porcelain Co.*, 30 Colo. App. 158, 161, 490 P.2d 96, 98 (1971) (employee who suffered two nervous breakdowns was not entitled to benefits because his mental health condition did not make him unable to perform the work). Here, though, the hearing officer

heard testimony from a number of witnesses, including Ms. Gomez, who detailed her frequent breakdowns at work, and the hearing officer found that Ms. Gomez became mentally unable to perform her job duties. While the evidence on this issue might have been conflicting, it was up to the hearing officer to resolve conflicts in the testimony. *See Elec. Fab Tech. Corp. v. Wood*, 749 P.2d 470, 471 (Colo. App. 1987) (conflicting testimony about employee's physical and mental inability to perform her work was properly resolved by fact finder); *see also Tilley v. Indus. Claim Appeals Office*, 924 P.2d 1173, 1177 (Colo. App. 1996) (in unemployment proceedings, hearing officer must resolve conflicting testimony).[1]

---

[1] The Library also argues that Ms. Gomez did not claim to be unable to perform her job duties until she filed her brief with the Panel. At the hearing, though, Ms. Gomez testified that she "tried [her] best" and her "hardest in preparing that report," but that she "was severely depressed and stressed" and "was having several breakdowns throughout that time"; that she was on "a couple of different medications for [her] stress disorder and [her] depression"; and that she believed her supervisors knew that she was having trouble performing her job duties because "everybody in the library" noticed "that [she] was a mess" and required assistance from her staff, who "realiz[ed] that [she] . . . was having a mental breakdown." We conclude this issue was presented to the hearing officer and that, based on the evidence, the hearing officer reasonably concluded that Ms. Gomez was mentally unable to perform the work.

### 2. The Panel Properly Rejected the Hearing Officer's Legal Conclusion That Gomez Was "At Fault"

¶ 20 Finally, the Library argues that the Panel erred in reversing the hearing officer's conclusion that because Ms. Gomez was "at fault" for her own mental health disorders, she was therefore disqualified from receiving benefits. We discern no error.

¶ 21 Whether a claimant is entitled to unemployment compensation benefits depends upon the reason for the claimant's job separation. *See Debalco Enters., Inc. v. Indus. Claim Appeals Office*, 32 P.3d 621, 623 (Colo. App. 2001). Ordinarily, the hearing officer's determination that Ms. Gomez was discharged for failing to complete the report would have led to disqualification of benefits. *See* § 8-73-108(5)(e)(XX) (failure to meet established job performance standards).

¶ 22 However, the hearing officer also determined that Ms. Gomez was mentally unable to prepare the report. Where certain evidentiary findings support application of a disqualifying subsection of the statute, a claimant may still be entitled to benefits if another evidentiary finding or the totality of the circumstances establishes that the job separation occurred through no fault of the

11

claimant. *See Velo v. Emp't Sols. Pers.*, 988 P.2d 1139, 1142 (Colo. App. 1998); *Keil v. Indus. Claim Appeals Office*, 847 P.2d 235, 237 (Colo. App. 1993). Typically, a claimant who is discharged because she is "physically or mentally unable to perform the work" is eligible to receive benefits. § 8-73-108(4)(j); *see also Colo. State Judicial Dep't v. Indus. Comm'n*, 630 P.2d 102, 103 (Colo. App. 1981).

¶ 23    But after finding that Ms. Gomez was mentally unable to perform the work, the hearing officer concluded that Ms. Gomez was nonetheless "at fault" for her separation because she was responsible for bringing about her own mental health disorders, which, according to the hearing officer's interpretation of Ms. Gomez's testimony, were triggered by her supervisors' criticism of her poor work performance. Because Ms. Gomez "was at fault for becoming mentally unable to perform her job duties," the hearing officer concluded she was disqualified from receiving benefits under section 8-73-108(5)(e)(XX).

¶ 24    Under the statute, "fault" is a term of art applied to determine whether the claimant or the employer is responsible overall for the separation from employment. *Cole v. Indus. Claim Appeals Office*,

964 P.2d 617, 618 (Colo. App. 1998). The concept of "fault" is "not necessarily related to culpability," *City & Cty. of Denver*, 756 P.2d at 377 (quoting *Zelingers v. Indus. Comm'n*, 679 P.2d 608, 609 (Colo. App. 1984)); instead, it has been defined as "requiring a volitional act or the exercise of some control or choice by the claimant in the circumstances resulting in the separation such that the claimant can be said to be responsible for the separation." *Cole*, 964 P.2d at 618.

¶ 25    By finding that Ms. Gomez was mentally unable to complete the report (the reason for her termination), the hearing officer necessarily found that her conduct was nonvolitional — she was unable, not unwilling, to complete the report — and therefore she could not be at fault for her separation from employment. *Cf. City & Cty. of Denver*, 756 P.2d at 378 (conduct induced by alcoholism is nonvolitional when employee's alcoholism has progressed to the stage that employee is unable to abstain from drinking). However, the hearing officer then decided that Ms. Gomez was at fault for being mentally unable to complete the task, meaning that Ms. Gomez had control over, and made a conscious choice about, her

acute anxiety and major depressive disorders.  We agree with the Panel that the hearing officer erred in ascribing fault to Ms. Gomez for the mental health disorder that prevented her from completing her assigned job duties.

¶ 26     Under section 8-73-108(4), an employee separated from her job "shall be given a full award of benefits if any of the following reasons and pertinent conditions related thereto are determined by the division to have existed," including that the employee is "physically or mentally unable to perform the work or unqualified to perform the work as a result of insufficient educational attainment or inadequate occupational or professional skills."  § 8-73-108(4)(j). We do not read that provision to permit a further inquiry into whether the employee is "at fault" for bringing about the "pertinent condition" in the first instance.

¶ 27     We conclude, as did the Panel, that the reason for the employee's condition or status under section 8-73-108(4)(j) is too attenuated from the issue of the proximate cause of the employee's separation from employment.  Suppose, for example, that a hearing officer determined that an employee was discharged because she

was unable to perform the work as a result of insufficient educational attainment. Could the hearing officer then inquire into the reasons for the employee's failure to attain a certain educational status? What if the employee had dropped out of college decades earlier? Would the employee be "at fault" for not obtaining the necessary education or skills to do the work required by the employer? But what if the employee had dropped out because a parent had died, and she no longer had the money to continue her education?

¶ 28     The hearing officer concluded that Ms. Gomez brought on her own acute anxiety and major depressive disorder by performing poorly in 2013 and subjecting herself to criticism from her supervisors. But what if Ms. Gomez might have been able to withstand the criticism except that she had a family history of depression which made her more susceptible to a breakdown? Or what if Ms. Gomez's initial poor performance, which led to her supervisor's criticism, was based on her inability to do the work because of inadequate occupational or professional skills (a finding that might very well be supported by the evidence in this case)?

¶ 29    In our view, this provision of the statute simply does not contemplate a never-ending inquiry into the reasons behind the employee's inability to perform the work because those reasons are too attenuated from the cause of the separation. The Library has offered no authority for its argument, and we have been unable to uncover any case law supporting the hearing officer's analysis.

¶ 30    Instead, at least one division of this court has upheld an award of benefits under section 8-73-108(4) when the claimant was clearly "at fault" for the physical or mental inability to perform his duties. *See Pepsi-Cola Bottling Co. of Denver v. Colo. Div. of Emp't & Training*, 754 P.2d 1382, 1383 (Colo. App. 1988) (claimant terminated for not reporting his absence in a timely manner was awarded benefits under subsection (4) because he was physically unable to do so, even though the physical inability was caused by his consumption of alcohol and tranquilizers); *see also Indus. Comm'n v. Moffat Cty. Sch. Dist. RE No. 1*, 732 P.2d 616, 621 (Colo. 1987) (teacher who was dismissed for drinking with students might still be eligible for unemployment benefits if she could not perform her work due to inadequate professional skills). If the employee is

16

unable to do the work because of a mental, physical, or skills-based impairment, her conduct is nonvolitional and, for purposes of the statute, she is not at fault for her separation from employment.

¶ 31 Moreover, we note that the Act is intended to provide a speedy determination of eligibility through a simplified administrative procedure. *Hewlett*, 777 P.2d at 707. The ultimate question under subsection (4)(j) is whether the employee's conduct was volitional. In our view, an inquiry into the root cause of an employee's mental impairment is simply beyond the scope of the hearing's purpose.

¶ 32 The hearing officer opined that Ms. Gomez's acute stress and major depressive disorders were brought on by her supervisors' justifiable criticism of her job performance. But Ms. Gomez testified that her stress was based not on legitimate responses to her poor work performance, but on a belief that she had been unfairly singled out for disciplinary action, perhaps based on her age, and that she felt "threatened" and "harassed" by the director. The hearing officer did not find Ms. Gomez's termination to be discriminatory, but that does not lead inexorably to a conclusion that Ms. Gomez's acute stress and major depression were

necessarily the result of nothing more than her own performance deficiencies. Ms. Gomez's subjective understanding of the circumstances, even if factually inaccurate, could certainly have caused — or, at a minimum, contributed to — her mental health problems. In other words, the record does not definitively establish the cause of Ms. Gomez's disorders.

¶ 33 The dissent emphasizes that Ms. Gomez's poor performance in 2013 was based on volitional conduct. Even if we assume that is true (although, as we have noted, there is evidence that Ms. Gomez could not satisfactorily prepare the complex report the director envisioned because of inadequate occupational or professional skills), the Library did not terminate Ms. Gomez because of her performance in 2013. Instead, according to the hearing officer's findings, she was terminated in October 2014 for failing to complete the report — a task the hearing officer said she was incapable of performing because of her mental impairment. The question is whether Ms. Gomez was "at fault" for the conduct that was the proximate cause of her separation, not generally at fault for being a bad employee.

¶ 34    This principle — that nonvolitional conduct does not make the employee "at fault" for her termination — is why the dissent's example about employees Smith and Wilson does not hold up.  In the dissent's example, Smith and Wilson are both poor-performing employees.  The employer disciplines both employees in the same way, but only Wilson develops a diagnosed mental health disorder.  The dissent says there would be something odd about treating those employees differently if they are both eventually terminated for their poor performance.  But if Smith is merely a poor-performing employee, for whatever reason,[2] and Wilson cannot do the work because she suffers from serious mental health problems, we do not view those employees as similarly situated; therefore, we do not agree that it would be odd, when both of them are fired (an action the employer may take, of course), that only Wilson would receive unemployment compensation benefits under the statute.

---

[2] However, we note that if Smith was not just a poorly performing employee but was actually "unqualified to perform the work as a result of insufficient educational attainment or inadequate occupational or professional skills," she too would be entitled to benefits.  § 8-73-108(4)(j), C.R.S. 2015

¶ 35    We also do not share the dissent's concern that our decision will open the floodgates to employees' illegitimate claims of mental incapacity.  The dissent says that employees will be able to avoid responsibility for their poor performance "merely because that poor performance caused them stress."  For one thing, our decision does not let poor-performing employees off the hook.  No one disputes that the Library could have terminated Ms. Gomez at any time during her twenty-five-year tenure.  Our decision just affirms the uncontroversial principle that if an employee is terminated for conduct that was nonvolitional, she is entitled to receive unemployment compensation benefits.

¶ 36    But also, our decision will not allow an employee to obtain benefits "merely" because her poor performance caused her "stress."  A hearing officer would have to find not just that the employee was suffering from stress, but that the stress was of such a serious nature that it rendered her incapable of performing her job duties, which is the finding the hearing officer made in this case.  Ms. Gomez was not suffering from ordinary job-related stress; she was diagnosed with acute anxiety and major depressive disorder, a

diagnosis the dissent does not question. At the hearing, she testified that her anxiety and depression were so acute that, several days before she went on medical leave, she sat in her car "sobbing and trying to take [her] anxiety medication." She told the hearing officer that she was in the midst of a "mental breakdown," and the hearing officer credited her testimony.

¶ 37 We agree with the Panel that the hearing officer erred in determining that Ms. Gomez was at fault for her nonvolitional conduct.

IV. Conclusion

¶ 38 The Panel's order is affirmed.

JUDGE TAUBMAN concurs.

JUDGE J. JONES dissents.

JUDGE J. JONES, dissenting.

¶ 39  I respectfully dissent.  In my view, the hearing officer's findings are supported by the record and the hearing officer correctly applied the law.  Consequently, I would reverse the Panel's order overturning the hearing officer's decision.

## I.  Background

¶ 40  The hearing officer made the following relevant findings. Claimant worked for employer as a public services manager.  In 2013, employer asked claimant to complete an organizational capacity report because she had requested additional staff and employer needed data to determine if she was effectively using existing staff.  Also, claimant's department did not have a clear or well-organized data collection report.  Claimant had "failed to maintain accurate departmental operational capacity benchmarks," had not consistently tracked employee schedules for staffing purposes, had demonstrated resistance or a lack of initiative when asked to produce specifics concerning her department's production, and had shown favoritism to certain employees in her department.

¶ 41    Claimant presented employer with a report that essentially amounted to a "data dump" lacking cohesion and analysis. Employer was disappointed with the report. In September 2014, employer gave claimant a performance improvement plan (PIP) that required her to prepare a written operational capacity report and to verbally present the report on October 7, 2014. Employer had previously counseled claimant and placed her on two other PIPs for failing to manage her staff effectively and act professionally.

¶ 42    Employer provided claimant with guidelines on how to prepare the report and encouraged her, if necessary, to get assistance from her supervisor. The supervisor later made herself available and gave claimant ideas on how to organize and compile information for the report. Employer informed claimant that failure to complete the presentation could lead to additional disciplinary action up to and including termination of employment.

¶ 43    On October 2, claimant's supervisor asked claimant about the October 7 presentation. Claimant said that she probably would not be ready to give it. The supervisor reminded claimant that employer had set aside time for the presentation and asked claimant to

23

indicate if there was anything the supervisor could do to help her. Claimant gave no such indication.

¶ 44 On October 7, claimant called in sick because she had anxiety. She came in to work the next day, but she did not provide employer with a copy of the report or ask about when she needed to present the report. In the afternoon, she left to purchase Halloween candy and supplies for a library event, although her duties did not include shopping for the event. That conduct displeased employer's director, who informed claimant's supervisor that he wanted to discharge claimant.

¶ 45 Claimant was absent from work on October 9 because of anxiety. Several days later she submitted a note from a nurse practitioner indicating that she was suffering from acute stress disorder and depression; employer granted claimant's request for leave. Claimant had begun suffering from stress and depression in 2013 after employer began issuing her corrective actions and PIPs based on her deficient job performance.

¶ 46 On October 14, employer telephoned claimant to see if she had a copy of the report. Employer's director had decided that if

claimant had completed the report as required, he might not discharge her. Upon learning that claimant had not completed the report, employer discharged her.

¶ 47 At the hearing, claimant testified that employer targeted her, issued the PIPs, and discharged her based on age discrimination. The hearing officer did not find this testimony persuasive, however, finding instead that employer discharged claimant for nondiscriminatory and nonretaliatory reasons.

¶ 48 The hearing officer found that claimant failed to meet established job performance standards by (1) not presenting or preparing the report; (2) not seeking assistance from her supervisor to complete the report when the supervisor reached out to her; and (3) not attempting to reschedule the presentation of the report and, instead, deciding to shop for Halloween items. In short, "[t]his employer terminated the claimant because the claimant did not present or prepare a report on organizational capacity for the administrative team."

¶ 49 Though claimant argued that she was mentally unable to perform her job, and therefore not at fault, *see* § 8-73-108(4)(j),

C.R.S. 2015 (a claimant is entitled to benefits if she is "physically or mentally unable to perform the work"), the hearing officer found that she was at fault because her anxiety and depression were caused by the employer's action taken in response to her poor job performance *and* her poor job performance justified the employer's actions (specifically, the PIPs and criticism).

¶ 50    Based on these findings, the hearing officer determined that claimant was at fault for the separation and that disqualification was warranted under section 8-73-108(5)(e)(XX).

¶ 51    On review, the Panel purported to accept the hearing officer's evidentiary findings because they were not contrary to the weight of the evidence. However, the Panel concluded that the cause of claimant's anxiety and depression were "remote from the proximate cause of her separation." It further concluded that there was "scant" evidence to support the hearing officer's finding that claimant engaged in any volitional conduct that caused her anxiety and depression and resulting inability to perform her job duties. Accordingly, the Panel awarded claimant benefits under section 8-

73-108(4)(j).  The majority agrees with the Panel's conclusions, but I do not.

## II.  Discussion

### A.  Applicable Legal Standards

¶ 52    Whether a claimant is entitled to unemployment benefits depends upon the reason for the claimant's job separation.  *See Debalco Enters., Inc. v. Indus. Claim Appeals Office*, 32 P.3d 621, 623 (Colo. App. 2001).  That reason is a matter to be resolved by the hearing officer as the trier of fact.  *See Eckart v. Indus. Claim Appeals Office*, 775 P.2d 97, 99 (Colo. App. 1989).

¶ 53    We may not disturb a hearing officer's evidentiary findings if they are supported by substantial evidence or reasonable inferences drawn from that evidence.  *Yotes, Inc. v. Indus. Claim Appeals Office*, 2013 COA 124, ¶ 10; *Tilley v. Indus. Claim Appeals Office*, 924 P.2d 1173, 1177 (Colo. App. 1996).  Substantial evidence means evidence that is probative, credible, and competent, and of a character that warrants a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of

27

contradictory testimony or contrary inferences. *Rathburn v. Indus. Comm'n*, 39 Colo. App. 433, 435, 566 P.2d 372, 373 (1977).

¶ 54 "It is the hearing officer's responsibility, as trier of fact, to weigh the evidence, assess credibility, resolve conflicts in the evidence, and determine the inferences to be drawn therefrom." *Hoskins v. Indus. Claim Appeals Office*, 2014 COA 47, ¶ 10. Neither we nor the Panel may reweigh the evidence or disturb the hearing officer's credibility determinations. *See id.*

¶ 55 The Panel is bound by the hearing officer's findings of evidentiary fact if they are not contrary to the weight of the evidence, which is a more deferential standard of review than the substantial evidence standard we apply on judicial review in other contexts. *See Samaritan Inst. v. Prince-Walker*, 883 P.2d 3, 9-10 (Colo. 1994).

¶ 56 We may set aside the Panel's decision if, as pertinent here, the findings of fact do not support the Panel's decision or the Panel's decision is erroneous as a matter of law. *See* § 8-74-107(6)(c)-(d), C.R.S. 2015.

¶ 57    Contrary to the majority (and the Panel), I conclude that the evidentiary findings and the record as a whole support the hearing officer's decision to disqualify claimant from receiving benefits based on her failure to meet job performance standards.

### 1. The Findings Support Application of Section 8-73-108(5)(e)(XX)

¶ 58    Substantial evidence in the record supports the hearing officer's findings that (1) claimant was discharged for failing to prepare and present the report; (2) preparing and presenting the report were within claimant's known job duties; and (3) claimant failed to meet established job performance standards by not preparing or presenting the report, not seeking assistance from employer, and not attempting to reschedule the presentation. Consequently, these findings are binding on review. *See Yotes*, ¶ 10; *Tilley*, 924 P.2d at 1177.

¶ 59    And these findings are also sufficient to satisfy section 8-73-108(5)(e)(XX). All that is necessary to establish a disqualification under that subsection is a showing that a claimant did not do the job for which she was hired and knew what was expected of her.

29

*See Richards v. Winter Park Recreational Ass'n*, 919 P.2d 933, 935 (Colo. App. 1996); *Pabst v. Indus. Claim Appeals Office*, 833 P.2d 64, 65 (Colo. App. 1992).

### 2. The Findings Support the Hearing Officer's Fault Determination

¶ 60    Even if evidentiary findings support application of a disqualifying subsection of the statute, a claimant may still be entitled to benefits if the totality of the circumstances establishes that the job separation occurred through no fault of the claimant. *See Velo v. Emp't Sols. Pers.*, 988 P.2d 1139, 1142 (Colo. App. 1998); *Keil v. Indus. Claim Appeals Office*, 847 P.2d 235, 237 (Colo. App. 1993).

¶ 61    As the majority notes, in the unemployment context, "fault" is a term of art used as a factor to determine whether the claimant or the employer is responsible overall for the job separation. *See Cole v. Indus. Claim Appeals Office*, 964 P.2d 617, 618 (Colo. App. 1998). Fault requires a volitional act or the exercise of some control or choice in the circumstances leading to the separation such that the claimant can be said to be responsible for it. *See id.*; *see also Richards*, 919 P.2d at 934. Fault is an ultimate legal conclusion to

30

be based on the established findings of evidentiary fact. *See Cole*, 964 P.2d at 618-19.

¶ 62 In this case, the hearing officer concluded that claimant was at fault for being discharged. As discussed, she based that conclusion on the evidentiary findings that claimant's anxiety, depression, and resulting inability to complete the report were caused by having received the PIPs and job performance criticism which, in turn, resulted from claimant's prior *volitional* conduct of not performing her job duties.

¶ 63 The Panel rejected this critical finding concerning the fault issue and the underlying reason for the job separation, concluding that there was only "scant" evidence to support it. Contrary to the Panel's conclusion, however, substantial record evidence, including primarily claimant's own testimony, supports the hearing officer's finding that claimant's anxiety and depression directly resulted from her past job performance deficiencies. For example, when asked why she had experienced stress, claimant responded that it was because she "had been given three [PIPs] in less than a year" concerning issues for which she believed she was being singled out

or harassed by employer. Claimant was also asked if the PIPs caused her "mental problem" and she responded, "[Y]es, they pushed . . . made this stress on me." She also testified that her stress started in 2013. That was the year in which employer hired a new director and claimant began receiving the PIPs and job performance criticism. In further explaining the reason for her stress, claimant testified: "[I]t wasn't just the PIP[s]. It was the way [employer was] coming after me."[3]

¶ 64 Hence, the record fully supports the hearing officer's finding that claimant's anxiety, depression, and resulting inability to complete the report were caused by her past job performance deficiencies, which were volitional. And the hearing officer was not persuaded by claimant's testimony that those issues arose from targeting or discrimination and, instead, found that they were based on claimant's volitional conduct of not performing her job.

---

[3] The majority euphemistically acknowledges that claimant "attributed her mental health problems to job-related *circumstances*." (Emphasis added.) Her testimony is actually crystal clear that claimant attributed her mental health problems to job-related stress caused by the employer's responses to her perceived poor job performance.

¶ 65    Although claimant's job-related (more accurately, poor job performance-related) anxiety and depression eventually rendered her unable to complete or present the report, based on the hearing officer's record-supported finding that claimant created that circumstance through her previous and volitional poor job performance, I perceive no error in the hearing officer's conclusion that claimant was at fault for the job separation. *See Cole*, 964 P.2d at 619; *Richards*, 919 P.2d at 934.

¶ 66    The majority concludes, however, that the cause of the claimant's mental condition is irrelevant. I disagree.

¶ 67    Nothing in the language of subsection (4)(j) prohibits inquiry into the cause of the worker's inability. Moreover, prohibiting such an inquiry is inconsistent with two critical overarching principles in unemployment benefit cases: (1) that the actual reason for a claimant's job separation determines whether she is entitled to receive benefits, *see Debalco Enters.*, 32 P.3d at 623; *Eckart*, 775 P.2d at 99; and (2) the decision whether to award benefits must "at all times be guided by the principle that unemployment insurance

is for the benefit of persons unemployed through no fault of their own." § 8-73-108(1)(a).

¶ 68     The hearing officer could properly consider whether claimant was ultimately responsible for her inability to complete and present the report.  And if, as here, the evidence arguably might support application of more than one subsection of the unemployment statutes — in this case section 8-73-108(5)(e)(XX) or section 8-73-108(4)(j) — hearing officers have wide discretion in determining which subsection to apply.  *See Goodwill Indus. of Colorado Springs v. Indus. Claim Appeals Office*, 862 P.2d 1042, 1046 (Colo. App. 1993).

¶ 69     In concluding that inquiry into a cause of inability to perform a job satisfactorily is not allowed, the majority notes that a claimant is necessarily at fault for any educational deficiency rendering her unable to perform the job, and yet loss of a job because of an educational deficiency entitles a claimant to a full award of benefits.  *See* § 8-73-108(4)(j).  But poor job performance does not cause an educational deficiency; that is — an educational deficiency cannot have a job-related cause.  So the majority's analogy is inapposite.

True, poor job performance ordinarily does not cause a mental condition, but, as this case demonstrates, it can. And that is why inquiry into the underlying cause of the mental condition is appropriate. Consider the following hypothetical.

¶ 70 Employee Smith performs her job poorly, despite her best efforts.[4] Her employer puts her on improvement plans and criticizes her performance, but Smith's performance does not improve so the employer terminates Smith. In Smith's case, the employer's actions did not cause her to suffer any anxiety or depression rising to the level of a mental condition.

¶ 71 Employee Wilson performs the same job as Smith and performs deficiently in the same ways and to the same extent as Smith. The employer takes the same actions regarding Wilson as it

---

[4] The majority deems the two employees in my hypothetical dissimilarly situated. But both have the same job, do the same work poorly in the same ways, and are treated the same by their employer. That they react differently to the consequences flowing from their poor performance does not render them dissimilarly situated. *Cf. Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (employees are similarly situated for purposes of a disparate treatment claim if they deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline).

35

took regarding Smith. Wilson's performance also does not improve, and the employer terminates her. However, unlike Smith, the employer's actions vis-a-vis Wilson's job performance caused her anxiety and depression to an extent constituting a diagnosable mental condition before she was terminated.

¶ 72 Under the majority's application of the statutes, Wilson gets benefits though Smith does not. This seems to me to be an odd application of the concept of fault. Perhaps the General Assembly intended such an odd result, but I doubt it. It seems much more likely to me that the General Assembly intended the mental inability exception to apply when the mental inability is not merely a reaction to an employer's justified and reasonable responses to an employee's poor job performance. *See Mounkes v. Indus. Claim Appeals Office*, 251 P.3d 485, 487 (Colo. App. 2010) (unemployment compensation statutes, like other statutes, must be interpreted in a way to give them sensible effect).

¶ 73 Though I do not question claimant's diagnosis, I fear that the majority's application of the law will encourage underperforming employees to claim that they ultimately cannot be held responsible

36

for their poor job performance merely because that poor

performance caused them stress.