2012 COA 148

**COMMUNICATIONS WORKERS OF AMERICA 7717, n/k/a Communications Workers of America, Local 7750, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Thomas W. Costello, Respondents.**

No. 12CA0062.

Colorado Court of Appeals, Div. I.

Aug. 30, 2012.

**1128**

Rosenblatt & Gosch, PLLC, Richard Rosenblatt, Greenwood Village, Colorado, for Petitioner.

John W. Suthers, Attorney General, Tricia A. Leakey, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

No Appearance for Respondent Thomas W. Costello.

Opinion by Judge J. JONES.

¶ 1 Petitioner, Communications Workers of America 7717, now known as Communications Workers of America, Local 7750 (employer), seeks review of a final order of the Industrial Claim Appeals Office (Panel) affirming a hearing officer's decision determining that respondent, Thomas W. Costello (claimant), was entitled to an award of unemployment compensation benefits. We affirm the Panel's order.

## I. Background

¶ 2 From 2003 until February 2011, claimant worked part time for employer serving as union president. He was supervised by employer's executive board. Claimant also worked full time for another employer (Qwest).

¶ 3 The hearing officer found that when the union wanted claimant to work on union business during times that he would otherwise be working for Qwest, employer paid him the equivalent wage he would have received from Qwest "to make up for the fact that although he was given time off work [by Qwest] to conduct union activities, he was not paid [by Qwest for that time]."

¶ 4 The hearing officer also found that claimant was separated from this employment when employer merged with another local union chapter, leaving no further available work for claimant. The hearing officer found no persuasive evidence that claimant should be disqualified from receiving benefits based on the reason for the separation, or that employer was exempt from responsibili-

ty for paying benefits under the circumstances.

¶ 5 On review to the Panel, employer argued that the money it paid to claimant did not constitute "wages" under the statutory scheme and that, consequently, claimant was not entitled to receive benefits. Employer further argued that claimant was not eligible to receive benefits because he still had his full-time job with Qwest and, therefore, had not suffered any wage loss.

¶ 6 The Panel concluded that the nature of the payments employer made to claimant did not exempt it from responsibility for paying benefits. Regarding claimant's alleged ongoing work for Qwest, the Panel concluded that was an eligibility issue not properly before it. Accordingly, the Panel affirmed the hearing officer's decision.

## II. Standards of Review

¶ 7 "We are bound by the hearing officer's findings of evidentiary facts if they are supported by substantial evidence in the record." *Harbert v. Indus. Claim Appeals Office,* 2012 COA 23, ¶ 7, 272 P.3d 1190. However, we review an agency's conclusions, including its interpretation of statutes, de novo. *See Benuishis v. Indus. Claim Appeals Office,* 195 P.3d 1142, 1145 (Colo.App. 2008); *see also Bell v. Indus. Claim Appeals Office,* 93 P.3d 584, 586 (Colo.App.2004) (appellate court reviews de novo the Panel's ultimate legal conclusions). We also review de novo the hearing officer's and the Panel's ultimate conclusions of fact. *See Harbert,* ¶ 8; *see also Federico v. Brannan Sand & Gravel Co.,* 788 P.2d 1268, 1272 (Colo.1990) (ultimate conclusions of fact are conclusions of law or mixed questions of law which determine the parties' rights and liabilities and which are generally phrased in the language of the controlling statute or legal standard).

## III. Analysis

¶ 8 Employer contends that the hearing officer and the Panel erred in awarding claimant benefits based on this job separation. Employer continues to assert that an award was improper because the amounts it paid claimant were not "wages" and because claimant suffered no actual wage loss from the separation. We are not persuaded to disturb the rulings of the hearing officer and the Panel.

### A. Employer's Payments to Claimant Were Statutory "Wages"

¶ 9 As a threshold matter, we note that employer is not contending that it was not a statutory "employer" under section 8–70–113, C.R.S.2011. Nor does employer appear to be arguing specifically that the services claimant provided to the union were not "employment" as broadly defined under section 8–70–115(1)(b), C.R.S.2011. That section provides that

service performed by an individual for another shall be deemed to be employment, irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the division that such individual is free from control and direction in the performance of the service, both under his contract for the performance of service and in fact; and such individual is customarily engaged in an independent trade, occupation, profession, or business related to the service performed.

¶ 10 Instead, employer contends that payments it made to claimant were not "wages" under the statutory scheme, and that absent payment of such wages, claimant cannot be awarded benefits.

¶ 11 We agree that a claimant must have been paid statutory "wages" in order to receive benefits. *See* § 8–73–102(1)(a), C.R.S. 2011 (providing that eligible unemployed individuals are paid benefits at a rate based on "wages paid for insured work" during a specified period); *see also* § 8–73–104(1), C.R.S. 2011 (providing for computation of "wage credits" based on wages for insured work). However, based on the hearing evidence, we are not persuaded the hearing officer or the Panel erred in concluding that employer's payments to claimant were wages.

¶ 12 Section 8–70–141(1)(a), C.R.S. 2011, defines "wages" as "[a]ll remuneration for personal services." In this context, "services" means actions "done for the benefit or at the command of another." *Magin v. Div.*

*of Emp't,* 899 P.2d 369, 370 (Colo.App.1995) (quoting *Weld Cnty. Kirby Co. v. Indus. Comm'n,* 676 P.2d 1253, 1256 (Colo.App. 1983)). We must construe the unemployment act liberally to further its remedial and beneficent purposes. *See Colorado Div. of Emp't & Training v. Hewlett,* 777 P.2d 704, 707 (Colo.1989); *Hopkins v. Indus. Claim Appeals Office,* —— P.3d ——, ——, 2011 WL 6425616 (Colo.App.2011) (*cert. granted* 2012 WL 3642477 (August 27, 2012)).

¶ 13 Here, the undisputed evidence established that claimant provided personal services to employer by performing work as its president. The undisputed evidence further established that employer provided remuneration or payments to claimant. Employer's own witness testified that, to receive the payments from employer, individuals such as claimant had to "fill out a voucher" indicating the amount of time they had worked for the union.

¶ 14 At the hearing, employer's sole witness characterized the payments to claimant as "wages" and also testified that employer reported the payments as wages for tax purposes:

> Hearing Officer: Okay ... you ... okay, you may not know this in your position, but my question to you is did the union report wages for the claimant?
>
> Witness: Yes.
>
> Hearing Officer: And why was that?
>
> Witness: Because we ... we did pay ... we did ... we did pay wages and we believed ... it's a legal responsibility to report those wages.
>
> Hearing Officer: So you paid wages? Witness: Yes.

¶ 15 Employer, nevertheless, contends that its payments to claimant were not for the personal services he provided but were, instead, simply to replace the wages claimant lost because he was not working for Qwest. It relies on evidence indicating that claimant was only paid for his union services if he actually lost time from Qwest.

¶ 16 Employer's assertion that the payments to claimant were solely "wage replacement" and not premised largely on the fact that claimant was providing services to the

union ignores the functional reality of the arrangement and simply begs the question of why employer was replacing claimant's lost wages. That employer may not have been obligated to pay claimant in every instance, or for every hour, he provided services, does not alter the fundamental reality that it did pay claimant whenever he performed personal services for the union during his scheduled work hours for Qwest.

¶ 17 Moreover, not treating employer's payments as wages could unfairly penalize claimant if he later became entitled to receive benefits based on a job separation from Qwest. In those circumstances, not treating employer's payments as statutory wages could potentially reduce both claimant's weekly benefit amount and his total amount of available benefits. *See* § 8–73–102(1)(a) (describing weekly benefit amount formula that is based on "wages paid" in particular quarters of a claimant's base period); *see also* § 8–73–102(2), C.R.S.2011 (describing alternate weekly benefit formula for certain claimants that is based on "total wages paid" for insured work during base period); § 8–73–104(1) (limiting total benefits available in any "benefit year" to lesser of twenty-six times a claimant's weekly benefit amount, or one-third of a claimant's wage credits paid during base period).

¶ 18 Based on the undisputed evidence that claimant was required to demonstrate that he performed services for the union to receive payment, and that all payments employer made to claimant directly corresponded to actual time he worked for the union, we perceive no error in the conclusion that employer's payments were "for" the personal services claimant provided and, therefore, constituted "wages" under the statutory scheme. *See Drivers, Salesmen, Warehousemen, Milk Processors, Cannery, Dairy Emps. & Helpers Local No. 695 v. Labor & Indus. Review Comm'n,* 154 Wis.2d 75, 452 N.W.2d 368, 372–73 (1990) ("lost time" payments by union to workers for work missed while performing union business were remuneration for personal services and, hence, "wages" for unemployment purposes); *Int'l Union, United Auto., Aircraft & Agric. Implement Workers of Am., Local 180, C.I.O. v.*

*Indus. Comm'n,* 248 Wis. 364, 21 N.W.2d 711, 714 (1946) (fact that union paid workers sum fairly equal to amount they would have earned working in their full-time jobs and considered payment as mere reimbursement for lost time in regular employment did not take payments outside definition of "wages" under unemployment act); *see also Commc'ns Workers of Am., Local 3107 v. Florida Indus. Comm'n,* 174 So.2d 751, 753, 755 (Fla.Dist.Ct.App.1965) (where workers performed part-time services for union, union's payments to workers based on time lost from their jobs with telephone company were "wages" for unemployment purposes).

¶ 19 Employer relies on *United Steelworkers of America, Local Union 5790 v. Industrial Commission,* 458 S.W.2d 716, 719–20 (Mo.Ct.App.1970), in which the Missouri Court of Appeals concluded that, for unemployment compensation purposes, a union that paid members who performed union services was not an "employer" of those members. The court also concluded that the amounts paid to the members were not wages, relying largely on the fact that the union paid the members only for time in which they were losing pay from their regular employment. *Id.*

¶ 20 We decline to follow *United Steelworkers,* for several reasons. First, much of the dispute in that case involved whether an employment relationship existed between the union and its members under Missouri law which, unlike Colorado's scheme, more narrowly defined "employment" as "services performed for wages or under any contract of hire." *Id.* at 720. In contrast, here, as noted, employer does not dispute that it was a statutory "employer" under section 8–70–113, or that claimant's work for the union constituted "service performed by an individual for another," thereby bringing it within Colorado's expansive definition of "employment" under section 8–70–115(1)(b).

¶ 21 Second, in our view, the *United Steelworkers* court failed to sufficiently consider the fact that to receive any payment from the union, members were required to have performed union services. We conclude that this requirement creates a sufficient nexus between the services performed and the payment. *See Drivers, Salesmen,* 452 N.W.2d at 372–73 (when union stewards took time off from regular work to perform union services, "nexus" between those services and payments was "apparent" such that the payments could be deemed remuneration for the services).

¶ 22 Finally, the *United Steelworkers* decision did not address whether failing to treat the payments as wages could potentially result in a reduced unemployment benefit available to the union members if they became separated from their regular jobs.

### B. Claimant's Alleged Lack of Resulting Wage Loss

¶ 23 Employer contends, in the alternative, that even if the payments it made to claimant were statutory "wages," claimant is ineligible to receive benefits because he suffered "no wage loss" upon his job separation as union president.

¶ 24 Insofar as this contention is merely a different way of asserting that employer's payments to claimant were not "wages" under the statutory scheme, we have already addressed and rejected that contention.

¶ 25 To the extent employer is asserting that claimant suffered no wage loss because, following the separation, he either continued working full time for Qwest, or received disability benefits, we agree with the Panel that these are eligibility issues that were neither litigated, nor addressed and resolved, in this entitlement proceeding. Consequently, those issues are not properly before us on review. *See Debalco Enters., Inc. v. Indus. Claim Appeals Office,* 32 P.3d 621, 624 (Colo.App.2001) (entitlement and eligibility issues are determined in separate proceedings and should not be intermingled, and issue of whether claimant continued working for new company, and effect of any such employment on unemployment claim, were eligibility issues not properly raised or reviewed in entitlement proceeding appeal).

¶ 26 The Panel's order is affirmed.

TAUBMAN and JUDGE VOGT *, JJ., concur.