Opinion by
JUDGE HARRIS
¶ 1 In this unemployment compensation benefits case, petitioner, Mesa County Public *762 Library .District (Library), -seeks review, of a final order of the Industrial Claim Appeals Office (Panel). A hearing officer disqualified respondent Laurie A. Gomez from receiving benefits under section 8-73-108(5)(e)(XX), C.R.S. 2015 (failure to meet established job performance - standards), finding -that although she was mentally unable to perform the work, a designation that would ordinarily entitle her to benefits under section 8-73-108(4)(j), her mental impairment had been caused in the first-instance by her own poor work performance. Thus, according to the healing officer, Ms. Gomez was ultimately at fault for her separation from employment.
¶ 2 The Panel reversed, concluding that the hearing officer’s determination of the etiology of Ms. Gomez’s medical condition was too attenuated from the cause of separation to be relevant and was not supported by substantial evidence. We affirm the Panel’s decision.
I. Background
¶ 3 Ms. Gomez'worked for the Library for almost twenty-five years. At the’time of her termination, she was the public services manager.
¶ 4 Ms. Gomez began having performance issues in the fall of 2013, shortly after the Library hired a new director. When she requested additional staff, the director asked Ms. Gomez to prepare an'organizational capacity report to determine- if she was effectively utilizing existing staff. Ms. Gomez had never prepared an organizational capacity report before, and the 'director was not satisfied with her work product, ¡which he'characterized as a “data dump” devoid of analysis, cohesion,, and context. Ms. Gomez was subsequently placed on two successive performance improvement plans (PIPs) for failing to manage her staff effectively and act professionally.
¶ 5 In September 2014, the director placed Ms. Gomez on a third PIP and told her that if she did not prepare a satisfactory organizational capacity report by October 7, 2014, she faced additional disciplinary action, including possible discharge.
¶ 6 Ms. Gomez called in sick on October 7. She returned to work on October 8, but she did not communicate with her supervisors about the report and, instead, she spent that afternoon shopping for supplies for a Library event scheduled for the end of the month. Ms. Gomez called in sick again on October 9 and did not return to work thereafter.
¶ 7 On October 14, she submitted a doctor’s note to her supervisors, which advised that Ms. Gomez was suffering from an acute stress disorder and major depressive disorder. The doctor recommended that Ms. Gomez remain off from work for four to six weeks so that hér condition could stabilize. At the time, Ms. Gomez was taking several psychotropic medications. The Library granted Ms. Gomez’s request for time off.
¶ 8 On October .15, while Ms. Gomez was home on leave, the director contacted her and requested that she send the organizational capacity report to him. Ms. Gqmez forwarded some documents to him, but the report was not satisfactory, and the director terminated her effective October 20, 2014. According to the hearing officer’s findings, the proximate cause of Ms. Gomez’s separation from employment was her failure to “present or prepare a report on organizational, .capacity for the administrative team.”
¶ 9 At the hearing to determine eligibility for unemployment compensation benefits, Ms. Gomez attributed her mental health problems 'to job-related circumstances. She told the hearing officer that she felt singled out- for disciplinary -action by the new director and believed that he was trying to force her to quit so that he could replace her with a younger employee. According to Ms. Gomez, her mental health deteriorated significantly after issuance of the September 2014 PIP arid, by early October, she had frequent emotional breakdowns at work. She said that her staff offered to help with tasks because they could'see that she was “a mess.”
,¶ 10 The hearing officer determined that Ms. Gomez “bec[ame] mentally unable to perform her job duties.” However, she declined to award benefits because she further concluded that Ms. Gomez was “at fault” for becoming mentally unable to complete the report. According to the hearing officer, Ms. *763 Gomez’s poor job performance beginning in .2013 led to criticism by her supervisors which, in turn, brought about her stress and major depressive disorders which ultimately prevented her from completing the report due on October 7. The hearing officer therefore found that Ms. Gomez had failed to meet the employer’s established job performance standards and, - under section 8-73-108(5)(e)(XX), she was disqualified from receiving benefits.
¶ 11 On review, the Panel adopted the hearing officer’s evidentiary findings that Ms. Gomez’s failure to complete the'report was the reason for her termination and that, at the time the report was due,' Ms. Gomez was mentally unable to complete it. The Panel, however, rejected, as a matter of law and fact, the hearing officer’s conclusion that Ms. Gomez was disqualified from receiving benefits because she was at fault for her own diagnosed mental health disorders. Accordingly, the Panel awarded Ms, Gomez benefits under section 8 — 73—108(4)(j).
¶ 12 The Library now appeals.
II, Standard of Review
¶ 13 We are bound by the hearing officer’s findings of evidentiary facts if they are supported by substantial evidence in the record. Harbert v. Indus. Claim Appeals Office, 2012 COA 23, ¶ 7, 272 P.3d. 1190. However, we review de novo the hearing officer’s and the Panel’s ultimate conclusions of fact. Commc’ns Workers of Am. 7717 v. Indus. Claim Appeals Office, 2012 COA 148, ¶ 7, 292 P.3d 1127 (citing Federico v. Brannan Sand & Gravel Co., 788 P.2d 1268, 1272 (Colo. 1990)) (ultimate conclusions of fact are conclusions of law or mixed questions of law and fact which determine the parties’ rights and liabilities and which are generally phrased in the language of the controlling statute or legál standard). The determination as' to whether a claimant was “at fault” for the separation from employment is an ultimate legal conclusion that we likewise review de novo. Bell v. Indus. Claim Appeals Office, 93 P.3d 584, 586 (Colo.App.2004). We will uphold the Panel’s decision unless the findings of fact do not support the decision or the decision is erroneous as a matter of law. § 8-74-107(6), C.R.S. 2015; Nagl v. Indus. Claim Appeals Office, 2015 COA 51, ¶ 7, 351 P.3d 577.
III. Discussion
A. Legal Principles
¶ 14 The Colorado Employment Security Act (Act) is designed to lighten the burden of unemployment on those who are involuntarily unemployed through no fault of their own. Colo. Div. of Emp’t & Training v. Hewlett, 777 P.2d 704, 706 (Colo.1989). Pursuant to the Act, benefits must be granted to an employee unless the job separation was due to one or more statutorily enumerated causes. Id..at 707. The Act is to be liberally construed to. further its remedial and beneficent purposes. Id.
¶ 15 In a claim for unemployment compensation benefits under section 8-73-108,; a claimant must first establish a prima facie ease, for an award. City & Cty. of Denver v. Indus. Comm’n, 756 P.2d 373, 380 (Colo.1988). Once established, “the burden of going forward shifts to the employer to demonstrate that the claimant’s termination w^s for a reason that would disqualify, .the claimant from the receipt of benefits under the provisions of § 8-73-108(5).” Ward v. Indus. Claim Appeals Office, 916 P.2d 605, 607 (Colo.App.1995), If this burden is met, “claimant then must present evidence to justify the acts which led to the separation and show that he or she is entitled to benefits under the provisions of § 8-73-108(4).” Id.
B. Analysis
1. The Panel Properly Accepted the - Hearing Officer’s Findings of Fact
¶ 16 The Library first argues that the Panel exceeded its authority by substituting its findings of fact for those of. the hearing officer. According to the Library, the hearing officer found that Ms. Gomez was terminated because she failed to complete the report, but the Panel determined that the reason for separation was her mental inability to perform her job duties. We disagree. In fact, the Panel deferred to, and adopted, both of the *764 hearing officer’s findings of fact critical to ■this appeal. Specifically, the hearing officer first found that the Library “terminated the claimant because the claimant did not present or prepare a report on organizational capacity for the administrative team.” The Panel concluded that this finding was supported by the record, and we agree. Next, the hearing officer found that Ms. Goiñez suffered from acute stress and depression, and that she “be[came] mentally unable to perform her job duties.” The Panel adopted this finding as well, and we likewise conclude that it is supported by evidence in the record.
¶ 17 Thus, we, like the Panel, are bound by the hearing officer’s finding that Ms. Gomez was terminated for failing to prepare a report that she was mentally unable to complete. Harbert, ¶ 7.
¶ 18 Because we are bound by these findings, we reject the Library’s next contention that the evidence demonstrated that Ms. Gomez’s mental health disorder did not affect her ability to complete the report. The Library insists that because Ms. Gomez worked on the report until early October and failed to notify her supervisors of her mental health problems until after the report’s due date, the record did not support a finding that Ms. Gomez’s medical condition made her unable to complete the assigned task.
¶ 19 We acknowledge that an employee with a - mental health condition is not automatically entitled to benefits upon termination, but must instead demonstrate that her mental health condition rendered her unable to perform her job duties. See, e.g., Tague v. Coors Porcelain Co., 30 Colo.App. 158, 161, 490 P.2d 96, 98 (1971) (employee who suffered two nervous breakdowns was not entitled to benefits because his mental health condition did not make him unable to perform the work). Here, though, the hearing officer heard testimony from a number of witnesses, including Ms. Gomez, who detailed her frequent breakdowns at work, and the hearing officer found that Ms. Gomez became mentally unable to perform her job duties. While the evidence on this issue might have been conflicting, it was up to the hearing officer to resolve conflicts in the testimony. See Elec. Fab Tech. Corp. v. Wood, 749 P.2d 470, 471 (Colo.App.1987) (conflicting testimony about employee’s physical and mental inability to perform her work was properly resolved by fact finder); see also Tilley v. Indus. Claim Appeals Office, 924 P.2d 1173, 1177 (Colo.App.1996) (in unemployment proceedings, hearing officer must resolve conflicting testimony).[1]
2. The Panel Properly Rejected the Hearing Officer’s Legal Conclusion That Gomez Was “At Fault”
•[9] ¶ 20 Finally, the Library argues that the Panel erred in reversing the hearing officer’s conclusion that because Ms. Gomez was “at fault” for her own mental health disorders, she was therefore disqualified from, receiving benefits. We discern no error.
¶ 21 Whether a claimant is entitled to unemployment compensation benefits depends upon the reason for the claimant’s job separation. See Debalco Enters., Inc. v. Indus. Claim Appeals Office, 32 P.3d 621, 623 (Colo.App.2001). Ordinarily, the hearing officer’s determination that Ms. Gomez was discharged for failing to complete the report would have led to disqualification of benefits. See § 8-73-108(5)(e)(XX) (failure to meet established job performance standards).
¶ 22 However, the hearing officer also determined that Ms. Gomez was mentally unable to prepare the report. Where certain evidentiary findings support application *765 of a disqualifying subsection of the statute, a claimant may still be entitled to benefits if another evidentiary finding or the totality of the circumstances establishes that the job separation occurred through no fault of the claimant. See Velo v. Emp’t Sols. Pers., 988 P.2d 1139, 1142 (Colo.App.1998); Keil v. Indus. Claim Appeals Office, 847 P.2d 235, 237 (Colo.App.1993). Typically, a claimant who is discharged because she is “physically or mentally unable to perform the work” is eligible to receive benefits. § 8 — 73—108(4)(j); see also Colo. State Judicial Dep’t v. Indus. Comm’n, 630 P.2d 102, 103 (Colo.App.1981).
¶ 23 But after finding that Ms. Gomez was mentally unable to perform the work, the hearing officer concluded that Ms. Gomez was nonetheless “at fault” for her separation because she was responsible for bringing about her own mental health disorders, which, according to the hearing officer’s interpretation of Ms. Gomez’s testimony, were triggered by her supervisors’ criticism of her poor work performance. Because Ms. Gomez “was at fault for becoming mentally unable to perform her job duties,” the hearing officer concluded she was disqualified from receiving benefits under section 8-73-108(5)(e)(XX).
¶ 24 Under the statute, “fault” is a term of art applied to determine whether the claimant or the employer is responsible overall for the separation from employment. Cole v. Indus. Claim Appeals Office, 964 P.2d 617, 618 (Colo.App.1998). The concept of “fault” is “not necessarily related to culpability,” City & Cty. of Denver, 756 P.2d at 377 (quoting Zelingers v. Indus. Comm’n, 679 P.2d 608, 609 (Colo.App.1984)); instead, it has been defined as “requiring a volitional act or the exercise of some control or choice by the claimant in the circumstances resulting in the separation such that the claimant can be said to be responsible for the separation.” Cole, 964 P.2d at 618.
¶ 25 By finding that Ms. Gomez was mentally unable to complete the report (the. reason for her termination), the hearing officer necessarily found that her conduct was non-volitional — she was unable, not unwilling, to complete the report — and therefore she could not be at fault for her separation from employment. Cf. City & Cty. of Denver, 756 P.2d at 378 (conduct induced by alcoholism is non-volitional when employee’s alcoholism has progressed to the stage that employee is unable to abstain from drinking). However, the hearing officer then decided that Ms. Gomez was at fault for being mentally unable to complete the task, meaning that Ms. Gomez had control over, and made a conscious choice about, her acute anxiety and major depressive disorders. We agree with the Panel that the hearing officer erred in ascribing fault to Ms. Gomez for the mental health disorder that prevented her from completing her assigned'job duties.
¶ 26 Under section 8-73-108(4), an employee separated from her job “shall be given a full award of benefits if any of the following reasons and pertinent conditions related thereto are determined by the division to have existed,” including that the employee is “physically or mentally unable" to perform the work or unqualified to perform the work as a result of insufficient educational attainment or inadequate occupational or professional skills.” § 8 — 73—108(4)(j). We do not read that provision to permit a further inquiry into whether the employee is “at fault” for bringing about the “pertinent condition” in the first instance.
¶ 27 We conclude, as did the Panel, that the reason for the employee’s condition or status under section 8 — 73—108(4)(j) is too attenuated from the issue of the proximate cause of the employee’s separation from employment. Suppose, for example, that a hearing officer determined that an employee was discharged because she was unable to perform the work as a result of insufficient educational attainment. Could the hearing officer then inquire into the reasons for the employee’s failure to' attain a certain edu: cational status? What if the employee had dropped out" of college decades earlier? Would the employee be “at fault”’ for not obtaining the necessary education or skills to do the work required by the employer? But what if the employee, had dropped out because a parent, had died, and she no longer had the money to continue her education?
¶ 28 The hearing officer concluded that Ms. Gomez brought on her own acute anxiety and major depressive disorder by performing *766 poorly in 2013 and subjecting herself to criticism from her supervisors. But what if Ms. Gomez might have been able to withstand the criticism except, that she had a family history of depression which made her more susceptible to a breakdown? Or what if Ms. Gomez’s initial poor performance, which led to her supervisor’s criticism, was based on her inability to do the work because- of inadequate occupational or professional skills (a finding that might very well be supported by the evidence in this case)?
¶ 29 In our view, this provision of the statute simply does not contemplate a never-ending inquiry into the reasons behind the employee’s- inability to perform the work because those reasons are too attenuated from the cause of the separation. The Library has offered no authority for its argument, and we have been unable to uncover any case law supporting the hearing officer’s analysis.
¶ 30 Instead, at least one division of this court has upheld an award of benefits under section 8-73-108(4) when the claimant was clearly “at fault” for the physical or mental inability to perform his duties. See Pepsi-Cola Bottling Co. of Denver v. Colo. Div. of Emp’t & Training, 754 P.2d 1382, 1383 (Colo.App.1988) (claimant terminated for not reporting his absence in a timely maimer was awarded benefits under subsection (4) because he was physically unable to do so, even though the physical inability was caused by his consumption of alcohol - and tranquilizers); see also Indus. Comm’n v. Moffat Cty. Sch. Dist. RE No, 1, 732 P.2d 616, 621 (Colo.1987) (teacher who was dismissed for drinking with students might still be eligible for unemployment benefits if she could not perform her work due to inadequate professional skills). If the employee is unable to do the work because of a mental, physical, or skills-based impairment, her conduct is nonvolitional and, for purposes of the statute, she is not at fault for her separation from employment.
¶ 31 Moreover, we note that the Act is intended to provide a speedy determination of eligibility through a simplified administrative procedure. Hewlett, 777 P.2d at 707. The ultimate question under, subsection (4)(j) is whether the employee’s conduct was volitional. In our view, an inquiry into the root cause of an employee’s mental impairment is simply beyond the scope of the hearing’s purpose.
¶ 32 The hearing officer opined that Ms. Gomez’s acute stress and major depressive disorders were brought on by her supervisors’ justifiable criticism of her job performance. But Ms. Gomez testified that her stress was based not on legitimate responses to’her poor work performance, but on a belief that she had been unfairly singled out for disciplinary action, perhaps based on her age, and that she felt “threatened” and “harassed” by the director. The hearing officer did not find Ms. Gomez’s termination to be discriminatory, but that does not lead inexorably to a conclusion that Ms. Gomez’s acute stress and major depression were necessarily the result of nothing more than her own performance deficiencies. Ms. Gomez’s subjective understanding of the circumstances, even if factually inaccurate, could certainly have caused— or, at a minimum, contributed to — her mental health problems. In other words, the record does not definitively establish the cause of Ms. Gomez’s disorders.
¶ 33 The dissent emphasizes that Ms, Gomez’s poor performance in 2013 was based on volitional conduct. Even if we assume that is true (although, as we have noted, there is evidence that Ms. Gomez could not satisfactorily prepare the complex report the director envisioned because of inadequate occupational or professional skills), the Library did not terminate Ms. Gomez because of her .performance in 2013. Instead, according to the hearing officer’s findings, she was terminated in October 2014 for failing to complete the report — a task the hearing officer said she was incapable of performing because óf her mental impairment. The question is whéther Ms. Gomez was “at fault” for the conduct that was the proximate cause of her separation,' not generally at fault for being a bad employee. '•
¶ 34 This principle — that nonvolitional conduct does not make the employee “at fault” for her termination — is why the dissent’s example about employees Smith and Wilson does not hold up, In the dissent’s example, *767 Smith and Wilson are both poor-performing employees. The employer disciplines both employees in the same way, but only Wilson develops a diagnosed mental health disorder. The dissent says there would be something odd about treating those employees differently if they are both eventually terminated for their poor performance. But if Smith is merely . a poor-performing employee, for whatever reason,[2] and Wilson cannot do the work because she suffers' from serious mental health problems, we do not view those employees as similarly situated; therefore, we do not agree that it would be odd, when both of them are fired (an action the employer may take, of course), that only Wilson would receive unemployment compensation benefits under the statute, '
¶ 35 We also do not share the dissent’s concern that our decision will open the floodgates to employees’ illegitimate claims of mental incapacity. The dissfent says that employees will be able tó avoid responsibility for their poor performance “merely because that poor performance caused them stress.” For one thing, our decision does not let poor-pérforming employee's off the hook. No one disputes that the Library could have terminated Ms. Gomez at any time, during her twenty-five-year tenure. Our decision just affirms the uncontroversial principle that if an employee is terminated for conduct that was nonvolitional, she is entitled to receive unemployment .compensation benefits.
¶ 36 But also, our decision will not allow an employee to obtain benefits “merely” because her poor performance caused her “stress.” A hearing officer would have to find not just that the employee was suffering from stress, but that the stress was of such a serious nature that it rendered her incapable of performing her job duties, which is the finding the hearing officer made in this ease. Ms, Gomez was not suffering from ordinary job-related stress; she was diagnosed with acute anxiety and major depressive disorder, a diagnosis -the- dissent does not question. At the hearing, she- testified that her anxiety and depression were so acute that, several days before she went on medical leave, she sat in her car “sobbing and trying to take • [her] anxiety medication.” She told the ■ hearing officer that she was in the midst of a “mental breakdown,” and the hearing officer credited her testimony.
¶ 37 We agree with the Panel that the hearing officer erred in determining that Ms. Gomez was at fault for her nonvolitional conduct.
■ IV. Conclusion
¶ 38 The Panel’s order is affirmed.''
JUDGE TAUBMAN cpncurs.
JUDGE J. JONES dissents.

. The Library also argues that Ms. Gomez did not claim to be unable to perform her job duties until she filed her brief with the. Panel. At the hearing, though, Ms. Gomez testified that she "tried [her] best” and her "hardest in preparing that report,” but that she "was severely depressed and stressed” and "was having several breakdowns throughout that time”; that she was on "a couple of different medications for [her] stress disorder and [her] depression"; and that she believed her supervisors knew that she was having trouble performing her job duties because "everybody, in the library" noticed "that [she] was a mess” and required assistance from her staff; who "realiz[ed] that [she] ... was having a ■ mental breakdown.” We conclude this issue was presented to the hearing officer and that, based on the evidence, the hearing officer reasonably concluded that Ms. Gomez was mentally unable to perform the work.

. However, we note that if Smith was not just a poorly performing employee but was actually •"unqualified to perform the work as a result of insufficient educational attainment or inadequate occupational or professional skills,” she too would be entitled to benefits. § 8-73-108(4)©, C.R.S. 2015