JUSTICE COATS,
dissenting.
¶32 I write in dissent from the opinion of the majority in part because I believe the liberties it takes in construing the unemployment insurance statutes are not justified and will substantially undermine the role statutorily assigned to “fault” in the awardability of benefits. In part, however, I simply feel compelled to highlight the irony (and perhaps absurdity) of awarding benefits on the basis of physical or mental inability to perform a job, as the result of anxiety induced by the claimant’s own failure to perform and her employer’s corresponding demand that she do so. I see little merit in offering another point by point refutation of the majority’s arguments, which I believe to have already been largely anticipated and effectively rebutted, in some thirty-five paragraphs, by the dissenting voice on the court of appeals panel below. See Mesa Cty. Pub. Library Dist. v. Indus. Claim Appeals Office, 2016 COA 96, ¶¶ 39-73, — P.3d —(Jones, J., dissenting). Rather, I write separately simply to emphasize what I consider to be the fundamental flaw in the majority’s reasoning, responsible for leading it so far astray.
¶33 While the majority acknowledges, as it must, that “unemployment insurance is for the benefit of persons unemployed through no fault of their own,” § 8-73-108(l)(a), C.R.S. (2016), the crux of its reasoning, as I understand it, is that once it is determined that the employee has become mentally unable to perform the job, subsection (4)(j) cuts off any further inquiry into the employee’s “fault” for causing her own inability to perform. As its primary statutory justification for this proposition, the majoxity asserts that unlike the other enumerated reasons for mandating a full award of unemployment benefits, subsection (4)(j), which deals with physical or mental inability to perform, contains no qualifying language and therefore must be taken as dispositive of the question of fault, in and of itself, without further inquiry. But this proposition disregards the framework of subsection (4) itself, the introductory language of which governs all of the subsequent paragraphs of that subsection, including (j)- That introductory language makes clear that a full award of benefits is *1123 not mandated by the existence of one of the enumerated reasons alone but depends upon the consideration of any “pertinent conditions related thereto.” § 8-73-108(4). The governing introductory language specifies the nonexclusive nature of the enumerated reasons by expressly admonishing that they are to be considered, “along with any other factors that may be pertinent to such determination.” Id. As subsection (l)(a) makes abundantly clear, the very purpose of the inquiry is to determine whether the claimant is unemployed through no fault of her own.
¶34 In addition, subsection (4)(j) treats “physically” and “mentally,” as bases for any inability to perform, with equal dignity. Surely the majority would not intend that (4)(jj cut off all further inquiry into fault regarding a physical inability to perform, rendering, for example, a claimant who shoots himself in the foot to avoid work entitled to unemployment compensation on an equal footing with a claimant who is unable to perform because of an on-the-job injury, Notwithstanding its assertion that its holding is limited to a mental inability to perform, see maj. op. ¶ 21 n.3, precisely that equivalence is, however, the necessary implication of the majority’s understanding of subsection (4)(j). To the extent the majority holds that the legislatively intended simplicity of the proceedings precludes inquiry into the cause of mental, but not necessarily physical, inability, apart from being difficult to square with the structure and syntax of (4)(j), such a rationale still flies in the face of the elaborate requirements for notice, written medical substantiation, and independent medical examination by an employer-chosen physician contemplated by subsection (4)(b), as prerequisites to establishing entitlement to an award whenever separation is based on the health of the worker. See § 8-73-108(4)(b).
¶35 In any event, whenever a court is forced to rely, as does the majority, primarily on such considerations as the intended simplicity of proceedings contemplated by the General Assembly and the beneficent purposes to be served by the legislation in question, it is virtually impossible not to see judicial embellishment at work in its interpretation of that legislation.
¶36 Quite apart from the text and organization of the statute itself, however, the fundamental question raised by the majority’s rationale concerns the proximateness of causation, which is clearly a matter of law and policy (as distinguished from historical or even “ultimate” fact), as to which no lower body is entitled to deference by a reviewing court. The “etiology” of the claimant’s mental inability to perform, as to which the majority will brook no inquiry, refers of course to the “cause” or “origin” of the claimant’s anxiety, that is, the cause of the cause of her “failure to meet established job performance or other defined standards.” See § 8-73-108(5)(e)(XX). By limiting the causation inquiry to the identification of a “cause” for the claimant’s failure to perform the last task required of her — the straw that broke the camel’s back, as distinguished from the totality of the straw weighing the camel down — and further barring inquiry into the claimant’s responsibility for making herself unable to perform that last task, the majority artificially (and seemingly arbitrarily) makes what is fundamentally a policy choice that fault for any behavior that causes the claimant to become mentally unable to perform is necessarily insufficiently proximate to be relevant to the determination whether the claimant is unemployed through no fault of her own.
¶37 Even if this court were limited by a fact finder’s determination of the proximateness of any particular cause, from my reading of the hearing officer’s order in this case, she never purported to designate the claimant’s anxiety the “proximate cause” of her separation. Instead, the hearing officer found, as a matter of historical fact, a chain of causation demonstrating the claimant’s fault for her separation, including findings that she failed to perform the final tasks levied upon her “because” of her anxiety and depression, and that she suffered from anxiety and depression only “because” of her employer’s corrective actions, requiring her to complete tasks that she had previously failed to perform. The hearing officer never actually evaluated the terse note from the claimant’s nurse practitioner recommending that she be granted sick leave for acute stress disorder and major depressive disor *1124 der and, instead, concluded merely that the claimant was at fault for becoming physically and mentally unable to perform her job duties. By accepting this conclusion as a finding that she was in fact mentally unable to perform but simultaneously rejecting that portion of the conclusion ascribing fault for any such inability, the majority manages to find itself bound, by a portion of the hearing officer’s findings, to reach precisely the opposite conclusion from that reached by the hearing officer.
¶38 Perhaps the greatest irony of the majority’s holding today is that, unlike the addiction cases, the claimant’s mental inability to perform was caused, according to her own assertions, by the very process mandated by law to protect her from arbitoary or unjustified separation. Essentially, the majority holds that the stress of being given an opportunity to correct her previous deficiencies has rendered the claimant without the least fault for her failure to perform her job. If that result appears to the General Assembly to be as anomalous and unfair as it does to me, it can presumably clarify its intent or, much as it has done with the problem of addiction, devise a satisfactory workaround.
¶39 I respectfully dissent.