25CA1835 Nettles v ICAO 02-19-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1835
Industrial Claim Appeals Office of the State of Colorado
DD No. 17961-2025

Rashaud Nettles,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado

Respondent.

ORDER AFFIRMED

Division I
Opinion by JUDGE MEIRINK
J. Jones and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

Rashaud Nettles, Pro Se

No Appearance for Respondent

¶ 1     Rashaud Nettles appeals the denial of his claim for unemployment benefits.  We affirm.

## I.     Background

¶ 2     Nettles worked as a maintenance specialist for General Shale Brick, Inc. (Employer).  Employer discharged Nettles, and he applied for unemployment insurance benefits.  After a deputy for the Division of Unemployment Insurance (Division) denied his claim, he appealed that decision, and the Division scheduled the matter for an evidentiary hearing regarding the reasons for Nettles's job separation.

¶ 3     Upon reviewing the evidence, the hearing officer found that Employer terminated Nettles because he "fail[ed] to report to work without prior notice on May 6, 2024, after he had failed to report to work without prior notice on two previous dates."  As a result, the hearing officer found, Nettles failed to meet the established job standard of "inform[ing] his supervisor before the start of [his] shift if he was going to be late or absent."  The hearing officer also found that, per Employer's policy, three such failures would result in termination.  Thus, Nettles was disqualified from receiving unemployment benefits under section 8-73-108(5)(e)(XX), C.R.S.

2025 (disqualifying claimants terminated for failure to meet "established job performance or other defined standards").  Finally, the hearing officer found that Nettles was "at fault" for his termination and was thus not otherwise entitled to benefits.

¶ 4    Nettles appealed to the Industrial Claim Appeals Office (Panel), which affirmed the hearing officer's decision.

## II.    Standard of Review and Legal Principles

¶ 5    Under section 8-74-107, C.R.S. 2025, we may not disturb factual findings "supported by substantial evidence" and may only set aside the Panel's decision if (1) the Panel acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the factual findings don't support its decision; or (4) the decision is erroneous as a matter of law.  Substantial evidence is "probative, credible, and competent, of a character which would warrant a reasonable belief in the existence of facts supporting a particular finding, without regard to the existence of contradictory testimony or contrary inferences."  *Rathburn v. Indus. Comm'n*, 566 P.2d 372, 373 (Colo. App. 1977).

¶ 6    Section 8-73-108(5)(e)(XX) disqualifies a claimant from receiving benefits if his "failure to meet established job performance

or other defined standards" caused his job separation. To evaluate cause, the hearing officer considers the totality of the evidence and determines the motivating factors in the employee's separation. *Eckart v. Indus. Claim Appeals Off.*, 775 P.2d 97, 99 (Colo. App. 1989). "All that is required to establish a disqualification pursuant to [section] 8-73-108(5)(e)(XX) is that claimant did not do the job for which he was hired and which he knew was expected of him." *Pabst v. Indus. Claim Appeals Off.*, 833 P.2d 64, 64-65 (Colo. App. 1992).

¶ 7     The disqualifying provisions of section 8-73-108(5)(e)(XX) "must be read in light of the express legislative intent . . . to provide benefits to those who become unemployed through 'no fault' of their own." *Cole v. Indus. Claim Appeals Off.*, 964 P.2d 617, 618 (Colo. App. 1998) (quoting § 8-73-108(1)(a)). Thus, even if the hearing officer's findings may support a disqualification under that subsection, a claimant may still be entitled to benefits if the totality of the circumstances establishes that his job separation occurred through no fault of his own. *Id.* In this context, "fault" requires a volitional act or "the exercise of some control or choice by the claimant in the circumstances resulting in the separation such that

3

the claimant can be said to be responsible for the separation." *Id.* A claimant's responsibility or "fault" for his job separation is an ultimate legal conclusion based on the established findings of evidentiary fact. *Id.* at 618-19.

## III. Application

¶ 8 The hearing officer found (and the Panel affirmed) that Employer's job performance standards "required employees to contact their direct supervisor via phone call, text message, or email before their shift if they knew they would be late or absent." Substantial evidence in the record supports this finding, as well as the finding that Nettles violated this policy. At the hearing, Employer's Plant Manager, Houston Walker, testified that Employer requires employees to notify their supervisor in advance of tardiness or absence. Walker further testified that he was Nettles's direct supervisor, and, by failing to notify Walker of his expected tardiness or absence on May 6, 2024, as well as his absences on April 22 and 24, 2024, Nettles violated Employer's notification policy. The hearing officer reasonably inferred that the policy required employees to notify their direct supervisor. Substantial evidence also supports the hearing officer's finding that Employer's policy

4

mandated termination after three failures to follow the notification protocol. Indeed, Walker provided direct testimony on this point.

¶ 9 The hearing officer's finding that Nettles knew about the foregoing policy finds substantial support in the record. Specifically, Walker testified that Nettles was made aware of this policy through written guidelines, which he received upon starting his position. According to Walker, Nettles signed a statement affirming that he read and understood the guidelines. Nettles does not dispute that he was aware of this policy.

## A. Willful Misconduct

¶ 10 Nettles argues that he "provided timely, documented notice of all absences and delays." Thus, he argues, the hearing officer erred by finding (and the Panel erred in affirming) "willful misconduct" by Nettles. We are not persuaded. First, "willful misconduct" is a legal term of art with no application in this case, and neither the hearing officer nor the Panel invoked it. *See* Black's Law Dictionary 1193 (12th ed. 2024). Though Nettles cites section 8-73-108(4) as requiring "willful misconduct," that term does not appear in that subsection, nor anywhere else in section 8-73-108. To the extent Nettles argues that the hearing officer erred by finding that he

5

violated Employer's notification policy, we discern no reversible error. As noted above, Walker testified that he was Nettles's direct supervisor and that Nettles did not provide him advanced notice that he would miss his shift on May 6. It is undisputed that Nettles texted Walker before his shift on May 6 stating that he was at the Department of Motor Vehicles. It is further undisputed that Walker called Nettles at or around 11:00 a.m. that day. And it is undisputed that at no point in those communications did Nettles tell Walker that he would miss his shift. It appears the point of contention lies in whether Walker was Nettles's direct supervisor. At the hearing, Nettles contradicted Walker's testimony by stating that another person was his direct supervisor, not Walker. However, the hearing officer, alone, resolves conflicts in the evidence. Like the Panel, we may not do so. *Mesa Cnty. Pub. Libr. Dist. v. Indus. Claim Appeals Off.*, 2016 COA 96, ¶ 19. Nor may we second-guess the hearing officer's credibility determinations. *Sanchez v. Indus. Claim Appeals Off.*, 2017 COA 71, ¶ 57.

## B. Due Process

¶ 11 Next, Nettles appears to argue that the Panel should have considered documentary evidence Nettles attached to his briefing to

the Panel but did not present at the hearing.[1]  By declining to consider these documents, Nettles argues, the Panel violated his due process rights.  Though he cites section 8-74-102(2), C.R.S. 2025, and *Goldberg v. Kelly*, 397 U.S. 254 (1970), neither authority supports his argument.  Section 8-74-102(2) discusses reconsideration of the Division's monetary determinations (e.g., "arithmetic computations, wage amounts, and dates of wage payments").  We perceive no application to the issues before us. *Goldberg* is similarly inapposite.  In *Goldberg*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that public assistance recipients be provided an evidentiary hearing before terminating their benefits.  *Id.* at 264, 267.  To the extent *Goldberg* applies in the context of unemployment benefits, it does not affect the issues before us, as Nettles received an evidentiary hearing and the opportunity to

---

[1] Nettles references documents (including a May 1, 2025, notice, and documentation regarding Gilberto Espino-Perez's role as Assistant Plant Manager) he provided at "the second hearing." However, the agency only held one hearing.  By "the second hearing," Nettles apparently intends to reference the Panel's review, as he attached the foregoing documents to his briefing for the Panel.

present all the documents he attached to his Panel briefing. That he did not do so does not mean the agency denied him due process.

¶ 12 Moreover, as the Panel noted, section 8-74-104(2), C.R.S. 2025, limits its review to evidence presented to the hearing officer. Nettles does not challenge section 8-74-104(2)'s constitutionality.

## C. Espino-Perez

¶ 13 Next, Nettles contends that "the agency's mischaracterization of [Gilberto] Espino-Perez fatally undermines its finding regarding April 22, 2025." Again, we disagree. Significantly, we note that the Panel set aside the hearing officer's finding that Espino-Perez was a coworker. Nettles does not acknowledge this, nor does he explain how the Panel erred by nonetheless affirming his disqualification. We perceive no error. As discussed above, substantial evidence supports the hearing officer's finding that the policy required Nettles to notify his direct supervisor when he would miss a shift. Walker was his direct supervisor, and Nettles failed to notify Walker of his absence on April 22. Whether Espino-Perez worked as a manager is immaterial.

## D. Evidence of Contact

¶ 14    Finally, Nettles contends that "[Walker] admitted under oath that [Nettles] communicated on all three disputed dates"; yet, the hearing officer "falsely stated there was 'no credible evidence' of contact." According to Nettles, "[t]his contradiction invalidates the ruling." We note that Nettles provides no record citations, in violation of C.A.R. 28, and we see no finding of "'no credible evidence' of contact" in either the hearing officer's or Panel's orders. To the contrary, the hearing officer expressly found that Nettles contacted Walker on the morning of May 6 and that Nettles notified Espino-Perez regarding his absences on April 22 and 24. However, mere "contact" is not dispositive here. As discussed above, the hearing officer found, with supporting substantial evidence, that Employer's policy required that Nettles notify his direct supervisor of any absence before the subject shift. It is undisputed that, as the hearing officer found, Nettles did not inform Walker that he would miss his shift on May 6. And the hearing officer found that Walker, not Espino-Perez, was Nettles's direct supervisor. It is undisputed that Nettles did not communicate with Walker on April 22 or 24.

## IV.  Disposition

¶ 15    We affirm the Panel's order.

JUDGE J. JONES and JUDGE LUM concur.